J-S69041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JOSHUA MATTHEW CHEWNING | : | |
| Appellant | : | No. 971 WDA 2017 |

Appeal from the Judgment of Sentence March 2, 2016
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s):  CP-33-CR-0000134-2012

BEFORE:   BOWES, J., RANSOM, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED NOVEMBER 09, 2017**

Appellant Joshua Matthew Chewning appeals from the judgment of sentence entered in the Court of Common Pleas of Jefferson County on March 2, 2016, following the revocation of his probation.  We affirm.

On March 21, 2012, Appellant pled guilty to one count of burglary[1] and was sentenced to five (5) years of probation which was to run consecutive to a violation order imposed at No. CP-33-CR-528-2010.   The trial court revoked Appellant's probation on January 17, 2013, and ordered that he be evaluated for the state intermediate punishment (SIP) program.   On April 19, 2013, Appellant's probation was again revoked, and he was resentenced to four years' probation to run consecutively to the sentence imposed at CP-

_____

[1] 18 Pa.C.S.A. § 3502(a).

_____

\*   Former Justice specially assigned to the Superior Court.

33-CR-539-2012. A condition was added that he successfully complete the SIP program.  That probationary sentence was later revoked on October 9, 2014, and the trial court resentenced Appellant to three (3) years' probation consecutive to the sentence imposed in CP-33-CR-539-2012.

On March 2, 2016, Appellant's probation again was revoked as a result of his entering a negotiated guilty plea at No. CP-33-CR-553-2015.[2] Following a presentence investigation, the trial court resentenced Appellant to a minimum term of six (6) years and three (3) months to twenty (20) years in prison to run consecutively to the sentence imposed at No. CP-33-CR-553-2015.

Appellant did not file a direct appeal; however, on April 15, 2016, he filed a counselled Motion to Reinstate Appellate Rights *Nunc Pro Tunc* which the trial court denied on April 18, 2016.   On July 12, 2016, Appellant filed *pro se* a petition Pursuant to the Post Conviction Relief Act (PCRA).[3]  Counsel was appointed and filed an amended PCRA petition on March 15, 2017. Following a hearing on the PCRA petition, the trial court entered its Order on June 7, 2017, granting the petition and reinstating Appellant's right to file a motion for reconsideration of his sentence within ten (10) days and to file a direct appeal within thirty (30) days.

_____

[2] In the latter case, Appellant had been charged on October 19, 2015, with Aggravated Assault, Burglary, Intimidation of a Witness, Criminal Trespass, Terroristic Threats, Public Drunkenness, and Criminal Mischief.
[3] 42 Pa.C.S.A. §§ 9541-9546.

Appellant complied, and on June 13, 2017, he filed a motion to modify the March 2, 2016, revocation sentence alleging it "was unreasonably excessive, was the result of an abuse of the court's discretion, and constitutes to[o] severe a punishment[.]" *See* Motion to Modify Sentence Pursuant to Pa.R.Cr.P. No. 708(E), filed 6/13/17, at ¶ 3. In its Order entered on June 14, 2017, the trial court denied Appellant's Motion, and Appellant filed a timely notice of appeal on June 27, 2017.

On June 29, 2017, the trial court issued its "1925(b) Order of Court" directing Appellant to file a concise statement of the matters complained of on appeal within twenty-one (21) days. Appellant filed the same on July 12, 2011, and averred therein that the trial court had abused its discretion in resentencing Appellant to a term of six (6) years and three (3) months to twenty (20) years in prison because it "failed to adequately state reasons on the record for the revocation sentence imposed." *See* "PA.R.A.P. NO. 1925(b) Statement of Errors Complained of on Appeal," filed 7/12/17, at ¶ 2.

In his brief, Appellant presents the following question for this Court's review:

> Did the trial court abuse its discretion in entering its March 2, 2016, probation revocation sentences (Gagnon[4] Order) in this within case?

---

[4] *Gagnon v. Scarpelli*, 411 U.S. 778 (1973).

Brief for Appellant at 4.   Appellant's issue challenges the discretionary aspects of his sentence, and this Court's scope of review in an appeal from a revocation sentencing includes discretionary sentencing challenges. ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1034 (Pa.Super. 2013) (*en banc*).   Notwithstanding, a challenge to the discretionary aspects of sentencing does not entitle an appellant to an appeal as of right. ***Commonwealth v. Solomon***, 151 A.3d 672, 676 (Pa.Super. 2016), *appeal denied*, 151 A.3d 672 (Pa. 2017). "Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance of appeal." ***Commonwealth v. Haynes***, 125 A.3d 800, 806–07 (Pa.Super. 2015) (citation omitted), *appeal denied*, 140 A.3d 12 (Pa. 2016).   An appellant challenging the discretionary aspects of his sentence must satisfy a four-part test to invoke this Court's jurisdiction.  We must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.... if the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.
> ***Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa.Super. 2013)[, *appeal denied*, 77 A.3d 1258 (Pa. 2013)] (citations omitted); ***see also Commonwealth v. Kalichak***, 943 A.2d 285, 289 (Pa.Super. 2008) ("[W]hen a court revokes probation and imposes a new sentence, a criminal defendant needs to preserve challenges to the discretionary aspects of that new

- 4 -

sentence either by objecting during the revocation sentencing or by filing a post-sentence motion.") [ (citation omitted) ].

*Commonwealth v. Colon*, 102 A.3d 1033, 1042–43 (Pa.Super. 2014), *appeal denied*, 109 A.3d 678 (Pa. 2015).

Herein, Appellant has satisfied the first three requirements of the four-part test. Following the trial court's order granting Appellant the right to file both a motion for reconsideration and a direct appeal *nunc pro tunc*, Appellant preserved the issue he presents herein in a timely motion to reconsider, and he filed a timely direct appeal. He also includes in his appellate brief a concise statement of the reasons for which he seeks allowance of an appeal, in compliance with Pa.R.A.P. 2119(f). In it, Appellant states his sentence is manifestly unreasonable and unsupported by adequate reasons on the record. *See* Brief for Appellant at 8. Thus, we must next determine whether Appellant has raised a substantial question requiring us to review the discretionary aspects of the trial court's sentence. *See Haynes*, 125 A.3d at 807.

The determination of whether there is a substantial question is made on a case-by-case basis, and this Court will grant the appeal only when the appellant advances a colorable argument that the sentencing judge's actions were either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms which underlie the sentencing process. *Commonwealth v. Sierra*, 752 A.2d 910, 912–13 (Pa.Super. 2000). In cases where the court resentences an offender following the revocation of

his probation, the court shall make as part of the record and disclose in open court at the time of sentencing a statement of the reason or reasons for the sentence which it imposed. 42 Pa.C.S. § 9721(b). Therefore, when a defendant asserts that a sentencing judge failed to state the reasons for a sentence, he raises a substantial question. *See Commonwealth v. Reynolds*, 835 A.2d 720, 733–34 (Pa.Super. 2003). In light of the foregoing, Appellant has raised a substantial question both in his assertion that his sentence is excessive and in his assertion that the trial court failed to state the reasons for it. *See Reynolds*, *supra*; *Sierra*, 752 A.2d at 913. Thus, we turn to the substantive merits of Appellant's claims, and in doing so employ a well-settled standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa.Super. 2014) (citation omitted), *appeal denied*, 117 A.3d 297 (Pa. 2015). Upon revoking probation, a sentencing court may choose from any of the sentencing options that existed at the time of the original sentencing, including incarceration, and is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence. 42 Pa.C.S.A. § 9771(b); *Colon*, 104 A.3d at 1044. "A sentencing court need

- 6 -

not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." ***Commonwealth v. Crump***, 995 A.2d 1280, 1283 (Pa.Super. 2010), *appeal denied*, 13 A.3d 475 (Pa. 2010) (citation omitted). In addition, the court need not consult the sentencing guidelines when it imposes sentence upon revocation. ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1040 (Pa.Super. 2013); 204 Pa. Code. § 303.1(b).

Herein, Appellant acknowledges that because he had been convicted of another crime at No. CP-33-CR-553-2015, the trial court had the authority under 42 Pa.C.S.A. § 9771(c)(1) to impose a prison term upon the revocation of his probation in this case. Brief for Appellant at 10. Appellant further admits "the reasons set forth by the court a[t] time of sentencing included the court's consideration of a P.S.I., and that [Appellant] needs to attend and complete anger management (TT 3-2-2016 at p. 24.[()]" ***Id***. Appellant also cites to the trial court's commentary regarding the "legitimate concerns" for the health and welfare of the public as well as of Appellant that were expressed in the PSI. ***Id***. at 11. Nevertheless, Appellant states that "[n]owhere in the record does the court consider, as reasons for the sentence imposed, the protection of the public, the gravity of the offense as [it] relates to the impact on the life of the victim and on the community, and

any other rehabilitative needs of [Appellant] other than anger management."
*Id*. at 12-13.

At the revocation hearing, the trial court heard argument from counsel and statements from Appellant and his mother. N.T. Plea and Sentence Hearing, 3/2/16, at 11-16. Appellant reminded the trial court he had been in front of the court since he was twelve years old in 2004 and that the court had given him "multiple chances." *Id*. at 13. Thereafter, the court engaged in a conversation with Appellant which not only reveals it was familiar with him and had considered his background, criminal history and the PSI report prior to resentencing, but also that the court had been concerned about and encouraging to Appellant for some time:

> THE COURT: I just wondered, every time you come to court, you're always polite and nice to me. Every time I see you on the
> street, you're always polite and nice, but there have been times when your behavior, let's say, has not been the best, and I just wonder if your temper gets the best of you.
> [APPELLANT]: I've got a mouth on me. I think I've got better as I've grew older, but I've still got a mouth on me, and it gets me into a lot of predicaments that I shouldn't even be in.
> THE COURT: You're in better shape than I am and you're a better athlete than I ever was, so I know that right off the bat, but you're bigger than most people. I'm bigger than most people. When you're that big, people tend to get afraid. I'm just pointing that out.
> I will say, I've reviewed the presentence investigation, considered your age, your background, your prior record, everything contained in the presentence and everything necessary for sentencing.
> Mr. Ruffner who wrote the presentence and our chief of probation services, I would say he's your biggest fan.

He recommended ten to twenty, but you recall, when you were in state prison and your brother passed, he came to me, and I made an order for a hearing so he could bring you back to the funeral and viewing. That's how much he thought of you.

And I think, reading this, he's frustrated. I'm sure you're frustrated. I know your mother has been here every time, and I'm darn sure that's [sic] she's frustrated, but wants the best for you.

I really do look at some of the things in the presentence, and I'm concerned because of the way, at each of -- and' I'm not looking back at your juvenile stuff because there were reasons, but when this burglary happened, as I recall, this was some type of deal to get drugs. It was an F-1 burglary. You and other people entered the house.

There may have been some other charges, and each time I've told you, I can give you twenty years in jail. I can give you ten to twenty, and I know you always hear me. I just don't know how you don't remember that when you're out in the street, and so it ended up all of these other charges happened.

This is the fourth time you've received new charges. This one involved fighting with the police because you were drunk when they did whatever to stop you. I don't know whether you were in Sheetz or whether Sheetz called or whether the police just went up there to hang out, and that's how this got started, but in between time, that theft from a motor vehicle, as I remember, involved drugs and involved at least one of your cohorts getting charged and convicted of robbery.

So I do think there's one concern. Mr. Ruffner has in his presentence which has shown over the last four years, is your propensity, if not you, yourself, to be involved and around violent activity, so I think the presentence legitimately concerns the health and welfare of people on the street along with yourself.

It's always a question of how long anyone needs to be in prison. Certainly for me to be out and be safe in the community, you know, with the appropriate amount of rehabilitation, I was hoping, knowing you had addiction issues and your past, I thought the SIP program would be appropriate. That wasn't.

When I resentenced you, you maxed out. I've certainly told you many times I would give you ten to twenty years.

[APPELLANT]: Your Honor, I'd like to say one more thing.

THE COURT: Sure.

[APPELLANT]: I was talking to my mom on the phone after I talked to Paul from the jail, whoever did this PSI on me, you

say that I'm always going back to the same people doing the same things.

I told my mom that I need to relocate, start to get new acquaintances, start brand new, start in a new county, even, a new state, anything to get away from -- I grew up here my whole life, and those are the only people I know. Most of them are drug addicts or anything. I'd like to move and start new and see if I can figure out how to --

THE COURT: If you really want to bring tears to my eyes, since you raised it, it doesn't have your juvenile history, but I recall when we sent you to Virginia, you had the upmost of opportunities. You did great down there. You had a benefactor who wanted to put you in a private school. You'd probably be pitching professional baseball by now.

[APPELLANT]: I wanted to go to college for baseball. I'm still young.

THE COURT: That's why I know you're a better athlete than me, and you're a left hander. You were at a camp that a millionaire
heiress took an interest in you and wanted to send you to a private baseball school.

I am a hundred percent sure in my mind, had that juvenile thing worked out, I'd be watching you on a professional baseball team right now. I have no question of that.

[APPELLANT]: You 'can still watch me. I'm still young.

THE COURT: That's just one opportunity. I mean, I remember we kept bringing you back, and I said, Josh, stay with your grandparents. Stay in Virginia. There's nothing here for you.

[APPELLANT]: And there ain't, neither, except for my family, my sister and my a [sic] mom, and my grandparents ain't doing good now.

But I was looking into going to school: I wanted to go to school. I'm still young. I wanted to pursue it and see if I could do it, even baseball farms.

I have a friend down in Virginia. One of my brother's best friends lives down in Virginia Beach. He owns a business. He called
me whenever I got out of prison, and he said I could move down there and work for his business. I could go to college down there.

THE COURT: I think that was kind of the conversation we had at Sheetz that day, because I was like, what are the three of you doing together.

[APPELLANT]: Who was I with?

THE COURT: You were with that foreign kid. You were on juvenile probation. You all were smoking cigarettes.

[APPELLANT]: I got off work. He was -- I didn't really know him.

THE COURT: I said you shouldn't be around each other.

[APPELLANT]: I don't hang around with that kid.

THE COURT: I tried to help. I don't like doing this part, as much as people at the jail will say I do.

So, okay. I've considered the presentence investigation. I think it's appropriate, but I'm not -- I think what would Be an appropriate sentence is that you serve no less than six years and three months consecutive to a maximum of twenty years. That will give you an aggregate sentence of no less than seven years nor more than twenty-two, years, so you'll be on some type of state parole.

I would say that part of that in consideration is the fact that you need to attend and complete anger management.

You also, with your time credits, I know the record would reflect if we went back, you wanted the time, you wanted to get out, so we placed all of your time credits towards those other sentences over the years so the time credit would be the hundred and some days, a hundred and forty-three days that were already applied to the other case. You're not RRRI eligible because of the assaults.

N.T. Plea and Sentence Hearing, 3/2/16, at 17-25.

In its Rule 1925(a) Opinion the Court further explained that:

What the record reflects here is that [Appellant] was a young man who had, in fact, received favorable treatment from both the [c]ourt and the probation officer who was recommending that he be incarcerated for 10-20 years. (Transcript, 03/02/2016, pp. 13-19). He had proven, though, that leniency, incarceration, and even the SIP program were ineffective deterrents, as he continued to engage in criminal activity while on probation and aware of the potential consequences. And though [Appellant] pleaded for leniency once again, conveying his desire to get away from negative local influences and perhaps attend college, (*see id*. at 21-23), the [c]ourt could not ignore the fact that he had already thrown away those exact opportunities.  (*See id*. at 22-23). It thus had no reason to believe that he would follow through when the

circumstances were less favorable than they had been previously, i.e., when he no longer had a guaranteed place to stay and a wealthy benefactor to finance his education.

The [c]ourt had no authority to *order* the defendant to leave the area, of course, and given his history, it viewed an extended term of incarceration as the only effective way to deny him access to his old friends and acquaintances and ensure that he could not continue victimizing innocent people. It thus exercised its authority under 42 Pa. C.S.A. 9771(c) to completely confine him, and it did so for appropriate and permissible reasons.

As for [Appellant's] second allegation, the transcript reveals that the [c]ourt sentenced him only after considering both his statements and the pre-sentence investigation report, the existence of which created the presumption that the [c]ourt considered all relevant sentencing factors. *Commonwealth v. Fowler*, 893, A.2d 758, 766 (Pa.Super. 2006). In its entirety, moreover, the transcript plainly reflects the [c]ourt's awareness and consideration of both the nature and circumstances of the violation and the nature and circumstances of [Appellant] himself. Accordingly, this second issue is also without merit.

Trial Court Opinion, filed 7/13/17, at 1-2 (footnote omitted, emphasis in original).

We discern no error of law or abuse of discretion in the trial court's analysis. Appellant's repeated violations of his probation, even after prior revocations, demonstrate his failure to take advantage of the court's rehabilitation efforts. **Colon**, 102 A.3d at 1045. Relying upon 42 Pa.C.S.A. § 9711(c), the court concluded the revocation of Appellant's probation and subsequent term of imprisonment was necessary to vindicate the authority of the court and secure the safety of both the public and Appellant. In light of the foregoing, we do not find Appellant's sentence of six years (6) and

three (3) months to twenty (20) years' incarceration to be manifestly excessive.

Moreover, the trial court adequately stated the reasons for its sentence on the record. It is axiomatic that the court "need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and the character of the offender." *Colon*, 102 A.3d at 1044 (citation omitted); 42 Pa.C.S.A. § 9721(b). The trial court complied with that directive herein. Thus, we conclude that the record reflects the court's reasons for imposing Appellant's sentence and its consideration of the circumstances of the offense, Appellant's background, and his character. *See Crump*, 995 A.2d at 1283. The record also reflects that the sentence imposed was within the maximum sentence that could have been imposed originally. *See Colon*, *supra* at 1044. Accordingly, the court did not err or abuse its discretion in this regard. For the foregoing reasons, we affirm the judgment of sentence.

Judgment of Sentence Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/9/2017