2015 PA Super 214

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ROYSCE HAYNES, | |
| Appellee | No. 2067 EDA 2014 |

Appeal from the Judgment of Sentence July 1, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014368-2012, CP-51-CR-0014369-2012

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROYSCE HAYNES, | |
| Appellant | No. 2219 EDA 2014 |

Appeal from the Judgment of Sentence July 1, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014368-2012, CP-51-CR-0014369-2012

BEFORE: DONOHUE, SHOGAN, and WECHT, JJ.

OPINION BY SHOGAN, J.: **FILED OCTOBER 05, 2015**

In these cross-appeals, Roysce Haynes ("Haynes") and the Commonwealth appeal from the judgment of sentence entered on July 1, 2014, in the Philadelphia County Court of Common Pleas. On appeal, the

Commonwealth challenges the trial court's refusal to apply 42 Pa.C.S. § 9715, which mandates a life sentence for a defendant "who has previously been convicted at any time of murder," based on the trial court's conclusion that the term "murder" excludes "murder of an unborn child." In his cross-appeal, Haynes claims that the sentence of thirty-five to seventy years of incarceration is manifestly excessive and fails to take into consideration his mental health needs. After careful review, we conclude that neither party is entitled to relief, and we affirm the judgment of sentence.

The trial court set forth the relevant factual background of this matter as follows:

> During the afternoon of September 10, 2012, Philadelphia Probation and Parole Officers Shondell Williams and Evan Moore-Mathis visited [Haynes]. As they approached his apartment, they saw him sitting on the steps outside the apartment entrance. He appeared stunned and was somewhat unresponsive to questions. His head was lowered and when asked whether the police should be summoned, he said yes. N.T. April 29, 2014, pp. 81-87.

> Philadelphia Police Officer Jonathan Ransom was called to 850 Chelton Avenue in the Germantown section of Philadelphia. There he encountered [Haynes], who told him that he had been in an argument with his girlfriend, that the argument had become physical, and that he had choked her. When Officer Ransom went inside [Haynes's] apartment, he saw the decedent, Atiya Perry, lying on the floor and bleeding from the head. She had no signs of life. Officer Ransom noticed a bloody towel lying on the floor near her head. *Id.* at 32-46.

> Dr. Marlin Osbourne, Assistant Medical Examiner, performed the autopsy on the decedent and determined that her death was a homicide achieved by strangulation. [The decedent] also had small lacerations on her left cheek. Dr. Osbourne determined that based on the size of the fetus in her uterus, she

- 2 -

had been pregnant for seven weeks at the time of her death. *Id.* at 113-124.

Detective Edward Tolliver took a statement from [Haynes] the day of the killing. In it, [Haynes] acknowledged killing the decedent. He said that the decedent had been hitting him with a closed fist on the side of his head and that she had tried to use pepper spray against him, and that he choked her. He also said that the decedent had told him that she was pregnant, but that he did not believe her. *Id.* at 139-157. Detective Tracey Byard searched the apartment in the immediate aftermath of the murder. He did not find any mace or pepper spray anywhere in the apartment. *Id.* at 189. Prenatal vitamins and magazines about pregnancy were found in the apartment. *Id.* at 68-69.

Trial Court Opinion, 9/18/14, at 2-3 (footnote omitted).

On September 10, 2012, Haynes was arrested and charged with murder and murder of an unborn child.[1] On April 30, 2014, following a jury trial, Haynes was found guilty of murder in the third degree for killing Atiya Perry and third-degree murder of her unborn child. On July 1, 2014, the trial court sentenced Haynes to a term of twenty to forty years of incarceration on the third-degree murder charge and a consecutive term of fifteen to thirty years of incarceration for third-degree murder of an unborn child. This resulted in an aggregated sentence of thirty-five to seventy years. On July 21, 2014, the Commonwealth filed a timely notice of appeal and on July 22, 2014, Haynes filed a timely cross-appeal. The

---

[1] An additional charge of abuse of a corpse was dismissed at the preliminary hearing.

Commonwealth, Haynes, and the trial court have complied with Pa.R.A.P.

1925.

**Commonwealth's Appeal at 2067 EDA 2014**

In a case of first impression, in the appeal at Superior Court Docket

Number 2067 EDA 2014, the Commonwealth presents the following issue for

this Court's consideration:

> Did the lower court impose an illegal sentence by declining to comply with 42 Pa.C.S. § 9715?

Commonwealth's Brief at 2.

We review an illegal-sentence claim pursuant to the following

parameters:

> The scope and standard of review applied to determine the legality of a sentence are well established. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.

***Commonwealth v. Poland***, 26 A.3d 518, 523 (Pa. Super. 2011) (citation

omitted).

Here, the Commonwealth avers that the trial court erred in failing to

apply the sentencing requirement set forth in 42 Pa.C.S. § 9715, which

provides as follows:

> **Life imprisonment for homicide**
>
> **(a) Mandatory life imprisonment.**--Notwithstanding the provisions of section 9712 (relating to sentences for offenses committed with firearms), 9713 (relating to sentences for

offenses committed on public transportation) or 9714 (relating to sentences for second and subsequent offenses), any person convicted of murder of the third degree in this Commonwealth **who has previously been convicted at any time of murder** or voluntary manslaughter in this Commonwealth or of the same or substantially equivalent crime in any other jurisdiction shall be sentenced to life imprisonment, notwithstanding any other provision of this title or other statute to the contrary.

42 Pa.C.S. § 9715(a) (emphasis added).

The crimes for which Haynes was convicted, third-degree murder and third-degree murder of an unborn child, are defined as follows:

**§ 2501. Criminal homicide**

**(a) Offense defined.--**A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being.

**(b) Classification.--**Criminal homicide shall be classified as murder, voluntary manslaughter, or involuntary manslaughter.

18 Pa.C.S. § 2501.

**§ 2502. Murder**

**(a) Murder of the first degree.--**A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

**(b) Murder of the second degree.--**A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

**(c) Murder of the third degree.--**All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree.

18 Pa.C.S. § 2502.

**§ 2604. Murder of unborn child**

* * *

**(c) Third degree murder of unborn child.--**

(1) All other kinds of murder of an unborn child shall be third degree murder of an unborn child.

(2) The penalty for third degree murder of an unborn child is the same as the penalty for murder of the third degree.

18 Pa.C.S. § 2604(c).

The Commonwealth argues that the trial court erred in not imposing a life sentence and cites to **Commonwealth v. Morris**, 958 A.2d 569 (Pa. Super. 2008) (*en banc*) as support for its argument. Commonwealth's Brief at 7. In **Morris**, a case where the appellant was convicted of two separate counts of third-degree murder, an *en banc* panel of this Court concluded that even though both convictions arose from the same criminal incident and trial, the trial court did not err in applying 42 Pa.C.S. § 9715 and imposing a life sentence. The **Morris** Court concluded that while the appellant was convicted of two third-degree murders in the same trial, the "at any time" language from the statute allowed one of the murder convictions to mandate a life sentence for the other murder conviction.

The Commonwealth also argues that the term "murder" as used in the phrase "previously been convicted at any time of murder" is unambiguous and includes "murder of an unborn child." Commonwealth's Brief at 7. Thus, the Commonwealth asserts that Haynes was "previously convicted of

murder" because the jury convicted him of third-degree murder of an unborn child as well as third-degree murder of decedent, Atiya Perry. Accordingly, the Commonwealth claims the trial court imposed an illegal sentence when it did not sentence Haynes to a mandatory term of life in prison. Commonwealth's Brief at 7.

It is undisputed that 42 Pa.C.S. § 9715 provides that when a defendant "has previously been convicted at any time of murder or voluntary manslaughter in this Commonwealth or of the same or substantially equivalent crime in any other jurisdiction" it triggers the application of a life sentence for a separate third-degree murder conviction. *Morris* further instructs us that the order of commission or conviction of the offenses is immaterial so long as the defendant has been convicted of another "murder." *Morris*, 958 A.2d at 580. However, the facts of the case *sub judice* raise an additional issue: does **murder of an unborn child** qualify as a crime contemplated by section 9715 that requires a life sentence upon a separate third-degree murder conviction? Because we conclude that murder of an unborn child is not an offense enumerated in section 9715 which triggers a mandatory life sentence,[2] we affirm.

_____

[2] Given our disposition, we decline to address the applicability of *Morris*. However, we note that *Morris* may raise issues under *Alleyne v. United States*, 133 S. Ct. 2151 (2013). In *Alleyne*, the United States Supreme Court recognized a narrow exception for the fact of a **prior** conviction. *Id*. at 2160, n.1 (citing *Almendarez–Torres v. United States*, 523 U.S. 224
*(Footnote Continued Next Page)*

Section 9715 states that if a defendant is convicted of murder or voluntary manslaughter in the Commonwealth of Pennsylvania, the mandatory sentence of life in prison applies if that defendant is convicted of an additional third-degree murder. 42 Pa.C.S. § 9715(a). However, section 9715(a) makes no mention of the separate crime of murder of an unborn child. This creates some ambiguity, or uncertainty, in the statute. Accordingly, we look to our well-established rules of statutory construction.

> In considering a question of statutory construction, we are guided by the sound and settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S. § 1921(a). In pursuing that end, we are mindful that "when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Indeed, "as a general rule, the best indication of legislative intent is the plain language of a statute." In reading the plain language, "words and phrases shall be construed according to rules of grammar and according to their common and approved usage," while any words or phrases that have acquired a "peculiar and appropriate meaning" must be construed according to that meaning. 1 Pa.C.S. § 1903(a). However, when interpreting non-explicit statutory text, legislative intent may be gleaned from a variety of factors, including, *inter alia*: the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the contemporaneous legislative history. 1

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

(1998)). In **Morris**, however, the defendant did not have a **prior** conviction, but rather was convicted **concurrently** of crimes, one of which triggered the application of the mandatory minimum. Furthermore, the Supreme Court in **Alleyne** appeared willing to revisit **Almendarez–Torres**, but it declined to do so because the parties did not raise the issue of the continued viability of **Almendarez–Torres**. **Alleyne**, 133 S. Ct. at 2160, n.1.

> Pa.C.S. § 1921(c). Moreover, while statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1 Pa.C.S. § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant.

*Commonwealth v. Grow*, 2015 PA Super 186, at *1-*2, ___ A.3d ___, ___ (Pa. Super. 2015) (*en banc*) (citation omitted).

"Murder of an unborn child" is contained in Chapter 26 of the Crimes Code, entitled "Crimes Against the Unborn Child Act," as opposed to "criminal homicide," which is set forth in Chapter 25. Thus, the legislature separated crimes against unborn children, including murder of an unborn child, from crimes committed against other victims, and it placed crimes against unborn children in a wholly separate chapter of the Crimes Code.

The Commonwealth argues that: "it cannot be seriously suggested that 'murder' as used in § 9715 does not include all the *degrees* of murder[.]" Commonwealth's Brief at 12 (emphasis in original). Insofar as this assertion labels murder of an unborn child as a degree of murder generally, the Commonwealth is incorrect. Murder of an unborn child as set forth in Chapter 26 of the Crimes Code, be it of the first, second, or third degree, is not a "degree" of Chapter 25 murder – it is a crime distinct from murder as defined in Chapter 25. Additionally, the available sentences for crimes committed under Chapter 25 and Chapter 26 are markedly different in that first degree murder is a capital offense, but first-degree murder of an unborn child is not. *Commonwealth v. Murray*, 83 A.3d 137 (Pa. 2013).

We are aware of no published case where a conviction for murder of an unborn child under Chapter 26 served as the predicate to a life sentence under 42 Pa.C.S. § 9715 for a separate conviction of Chapter 25 homicide, or *vice versa*. Rather, what our research has uncovered is that in instances where the facts are analogous to those in the case at bar, section 9715 was not applied.

In **Commonwealth v. Luster**, 71 A.3d 1029 (Pa. Super. 2013), the defendant was convicted of third-degree murder and third-degree murder of an unborn child, but he received an aggregate sentence of fourteen to twenty-eight years of incarceration. Similarly, in **Commonwealth v. Bullock**, 913 A.2d 207 (Pa. 2006), the defendant was found guilty, but mentally ill, of third-degree murder and voluntary manslaughter of an unborn child; however, the trial court sentenced the defendant to consecutive terms of imprisonment of fifteen to forty years for the murder of the adult victim, and to a term of five to twenty years for voluntary manslaughter of the victim's unborn child. **Id**. at 211. Additionally, a case distinguishing murder of an unborn child from homicide generally is **Commonwealth v. Booth**, 766 A.2d 843 (Pa. 2001). In **Booth**, the Pennsylvania Supreme Court held that the death of an unborn child resulting from a motor vehicle accident where the defendant was driving under the influence does not serve as the predicate for the crime of homicide by vehicle while driving under the influence.

Moreover, in another mandatory sentencing statute, 42 Pa.C.S. § 9714, which deals with sentences for second and subsequent offenses, the Legislature specifically enumerated murder and murder of an unborn child as separate offenses which can serve as a predicate offense to the imposition of a mandatory minimum sentence. 42 Pa.C.S. § 9714(g). The decision to specifically include murder of an unborn child in section 9714 illustrates the Legislature's awareness that murder and murder of an unborn child are separate offenses, and conversely, the absence of murder of an unborn child from section 9715 indicates that the omission was volitional.

In sum, the legislature chose to distinguish murder of an unborn child from murder generally, and it chose not to add murder of an unborn child to the predicate crimes specified in section 9715. The ambiguity evidenced in this case could have been alleviated by the Legislature by its inclusion of murder of an unborn child in section 9715, as it did in section 9714. Because we conclude that murder of an unborn child is not one of the offenses set forth in section 9715 triggering the imposition of a mandatory life sentence for a separate conviction of third-degree murder, the trial court was correct in holding that section 9715 did not mandate a life sentence in the case at bar. The Commonwealth is entitled to no relief on its appeal.

**Haynes's Appeal at 2219 EDA 2014**

In Haynes's cross-appeal at Superior Court Docket Number 2219 EDA 2014, Haynes presents the following issue for this Court's consideration:

Did not the sentencing court abuse its discretion and impose a manifestly excessive sentence when it sentenced the appellant to 35 to 70 years['] incarceration following a jury trial on the charges of third degree murder, 18 Pa.C.S. § 2502(c) and third degree murder of an unborn child, 18 Pa.C.S. § 2604(c), where even the aggravated range of the sentencing guidelines called for a lesser sentence and the trial court failed to take into consideration appellant's mental health needs?

Haynes's Brief, at 4.

Haynes's issue challenges the discretionary aspects of his sentence. We note that "[t]he right to appeal a discretionary aspect of sentence is not absolute." **Commonwealth v. Martin**, 727 A.2d 1136, 1143 (Pa. Super. 1999). Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance of appeal. **Commonwealth v. W.H.M.**, 932 A.2d 155, 163 (Pa. Super. 2007).

As we observed in **Commonwealth v. Moury**, 992 A.2d 162 (Pa. Super. 2010):

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

[W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [708]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

- 12 -

*Id*. at 170 (citing *Commonwealth v. Evans*, 901 A.2d 528 (Pa. Super. 2006)). The determination of whether there is a substantial question is made on a case-by-case basis, and this Court will grant the appeal only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. *Commonwealth v. Sierra*, 752 A.2d 910, 912-913 (Pa. Super. 2000).

Herein, the first three requirements of the four-part test are met: Haynes brought a timely appeal, raised the challenges in a post-sentence motion, and included in his appellate brief the necessary separate concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). Therefore, we next determine whether Haynes raises a substantial question requiring us to review the discretionary aspects of the sentence imposed by the trial court.

In his Pa.R.A.P. 2119(f) statement, Haynes argues first that the trial court failed to consider his mental health issues and rehabilitative needs. Haynes's Brief at 10. However, this Court has held on numerous occasions that a claim of inadequate consideration of such factors does not raise a substantial question for our review. *E.g., Commonwealth v. Cannon*, 954 A.2d 1222, 1229 (Pa. Super. 2008). We point out that Haynes does not allege that the trial court was unaware of his mental health issues or his

rehabilitative needs. Indeed, Haynes has not raised an issue that his sentence is "(1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Moury**, 992 A.2d at 170. Thus, we conclude that this claim fails to present a substantial question for review.[3]

Next, Haynes avers that the trial court sentenced him to a term of imprisonment that exceeded the aggravated range of the sentencing guidelines resulting in a manifestly excessive sentence. Haynes's Brief at 11-12. While a bald claim of excessiveness does not present a substantial question for review, a claim that the sentence is manifestly excessive, inflicting too severe a punishment, does present a substantial question. **Commonwealth v. Cartrette**, 83 A.3d 1030, 1038 (Pa. Super. 2013). Because Haynes's second issue arguably presents a claim that the sentence is manifestly excessive and too severe, we conclude that Haynes has presented a substantial question, and we proceed with our analysis.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest

_____

[3] We also point out that this argument is belied by the record. The trial court specifically noted that it reviewed Haynes's Presentence Investigation ("PSI") report and Mental Health Report prior to sentencing. N.T., Sentencing, 7/1/14, at 4. Where a sentencing court is informed by a PSI report, "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." **Commonwealth v. Ventura**, 975 A.2d 1128, 1135 (Pa. Super. 2009).

abuse of discretion. ***Commonwealth v. Fullin***, 892 A.2d 843, 847 (Pa. Super. 2006). In this context, an abuse of discretion is not shown merely by an error in judgment. ***Id***. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. ***Id***.

Haynes argues that the trial court sentenced him to "a sentence that far exceeded the aggravated range of the sentencing guidelines." Haynes's Brief 35. Haynes is mistaken.

Haynes correctly notes that the offense gravity score ("OGS") was fourteen while his prior record score ("PRS") was two. Haynes's Brief at 11. Haynes also correctly notes that the sentencing guidelines provide a minimum recommended sentence of between eight years up to the statutory limit. ***Id***. It is at this point, however, that Haynes proffers a *non sequitur*. He asserts that:

> the trial court imposed a sentence that far exceeded the aggravated range of the sentencing guidelines. [Haynes's] prior record consisted of an aggravated assault conviction, graded as a felony of the second degree and a simple assault conviction, thereby adding two points to his prior record score. The offense gravity score for both crimes he was convicted of, third degree murder and third degree murder of an unborn child, was fourteen. 204 Pa.Code § 303.7. Consequently, the sentencing guidelines recommended a range of ninety-six (96) months (or eight years) to the statutory limit, plus or minus twelve months. 204 Pa.Code § 303.7. **The trial court essentially disregarded this range and sentenced Mr. Haynes to an aggregate term of 35 to 70 years in custody.**

Haynes's Brief at 35 (emphasis added).

After review, the trial court clearly did not disregard the sentencing guidelines. In fact, in both the third-degree murder and third-degree murder of a child convictions, Haynes received a sentence in the standard range of the guidelines.

As noted, the applicable standard minimum-range sentence for each crime was between eight years and the statutory limit. 204 Pa.Code § 303.16. For the third-degree murder charge, Haynes received a sentence of twenty to forty years of imprisonment. Because forty years is the statutory maximum,[4] and because a minimum sentence cannot be more than half of the maximum sentence,[5] the statutory limit for the minimum was twenty years. Therefore, Haynes's sentence of twenty to forty years of incarceration for third-degree murder was a standard-range sentence.

The same logic holds true for the sentence imposed for murder of an unborn child. For the third-degree murder of an unborn child charge, Haynes received a sentence of fifteen to thirty years of imprisonment. Again, forty years is the statutory maximum,[6] and because, as explained above, a minimum sentence cannot be more than half of the maximum

_____

[4] 18 Pa.C.S. § 1102(d).

[5] 42 Pa.C.S. § 9756(b)(1).

[6] 18 Pa.C.S. § 1102(d).

sentence, the statutory limit on the minimum was twenty years. Thus, Haynes's sentence of fifteen to thirty years of incarceration for third-degree murder of an unborn child was a standard-range sentence, and no relief is due.[7]

In conclusion, we discern no error in the trial court's conclusion that 42 Pa.C.S. § 9715 was not applicable under the facts of this case, and therefore, the Commonwealth is entitled to no relief in the appeal at 2067 EDA 2014. Additionally, we conclude that there was no abuse of discretion in the sentence the trial court imposed, and Haynes is entitled to no relief in the appeal at 2219 EDA 2014. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/5/2015

---

[7] To the extent that Haynes views his aggregate sentence of thirty-five to seventy years as excessive due to the consecutive nature of the sentences, that claim is completely undeveloped in his brief. As such, we deem any argument as to the sentences being served consecutively waived on appeal. **Commonwealth v. Palo**, 24 A.3d 1050, 1058 (Pa. Super. 2011).