J-S30018-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| FREDERICK D. COLLINS | |
| Appellant | No. 1265 WDA 2017 |

Appeal from the Judgment of Sentence April 26, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at Nos: CP-02-CR-0012275-2015,
CP-02-CR-0013218-2015, CP-02-CR-0013234-2015,
CP-02-CR-0013236-2018, CP-02-CR-0013238-2015,
CP-02-CR-0013685-2015

BEFORE:  BENDER, P.J.E., STABILE, J. AND STRASSBURGER, J.[*]

MEMORANDUM BY STABILE, J.:                    **FILED JULY 16, 2018**

Appellant, Frederick D. Collins, appeals from his judgment of sentence for a series of felonies.  Appellant argues that the trial court erred in denying his presentence motion to withdraw his *nolo contendere* plea and abused its discretion in sentencing him to an aggregate of 25-50 years' imprisonment.[1] We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court sentenced Appellant to the following consecutive terms of imprisonment: at CP-02-CR-0012275-2015, 4-8 years for terroristic threats (18 Pa.C.S.A. § 2706); at CP-02-CR-0013234-2015, 5-10 years for persons not to possess firearms (18 Pa.C.S.A. § 6105); at CP-02-CR-0013236-2015, 5-10 years for persons not to possess firearms; at CP-02-CR-0013238-2015, 5-10 years for aggravated assault (18 Pa.C.S.A. § 2702); and at CP-02-CR-0013685-2015, 6-12 years for intimidation of witnesses or victims (18 Pa.C.S.A. § 4952).

Appellant was charged with a series of offenses arising from events between July and October of 2015, when he was 34½ years old. On October 25, 2016, Appellant pleaded *nolo contendere* to multiple charges at the above caption numbers. The trial court identified the charges and informed Appellant of the maximum sentence for each offense, and Appellant acknowledged that he understood the charges. N.T., 10/25/16, at 1-9. The Commonwealth summarized the relevant facts as follows:

> [H]ad we proceeded to trial [at CP-02-CR-0013234-2015], we would have called officers from the City of McKeesport Police Department, [and] they would have testified that on September 6th of 2015 at about 4:22 p.m., they were notified by Shona Green that a male had pointed a gun at her. Shona's neighbor, Michelle Simpson, had asked Shona to go over to Michelle's house to feed her dog. When Shona Green went to the house, the door swung open and [Appellant] was standing there pointing a silver pistol at her and he said to her: What the fuck are you doing at my house? I will fucking shoot you. So Shona then ran away.
>
> Six minutes later . . . at [CP-02-CR-0013236-2015], West Mifflin police received a dispatch about the prior incident, and Michelle Simpson who stated that [Appellant] was on his way to Monview Heights to kill her and everyone else. The officers arrived on scene, observed a silver minivan exiting the front gate and they pursued the van, initiated a traffic stop, and the officer asked who the passenger was and he stated his name was Louis Ellis, [and] they later identified him as [Appellant]. They identified the driver as Daryl Waite who apparently was a jitney driver and Waite told them that [Appellant] had entered the vehicle with a firearm, he pulled the firearm and said take me to Monview. During the drive[,] [Appellant] stated he was going to kill her, and Waite said that . . . there was a firearm in the glove compartment which the officer retrieved. There are two firearms charges [for] which we would have provided the certificate of non-licensure. Then at the lab, the firearm was identified as a .25–caliber Raven Arms pistol 912566, good operation, no barrel length in the report, but the officer would testify it was less than 16 inches. As to the persons not to possess, we would have introduced a certified conviction

for robbery of a motor vehicle and aggravated assault, November 19th of 2001, at CC 1999-14932.

* * *

In [CP-02-CR-0013218-2015], had this matter proceeded to trial, the Commonwealth would have called witnesses from McKeesport City Police Department, as well as the victim in this matter, Michelle Simpson. The testimony would have been heard that on or about July 16, 2015, in Allegheny County, that [Appellant] threatened the victim as well as her juvenile daughter, who was six years old at the time, that he would kill Michelle Simpson as well as physically assault her six-year-old daughter. [Appellant] also physically assaulted the victim Michelle Simpson by punching her in the back of the head.

Moving on to . . . [CP-02-CR-0013685-2015], had this matter proceeded to trial, the Commonwealth would have called officers from the West Mifflin Borough Police Department, namely Officer Joseph Hoffman, Officer Robert Fedor and Officer Michael Pintigh . . . Further the Commonwealth would have called a witness who was the victim, Michelle Simpson, as well as Magisterial District Judge Richard Olasz. The testimony would have been heard that on or about October 1, 2015, in the County of Allegheny that a preliminary hearing was being held where [Appellant] was Mr. Collins and the victim was Michelle Simpson, during the course of that preliminary hearing, Mr. Collins became disorderly and was removed from the hearing. On the way out of the hearing, he threatened the victim Michelle Simpson and threatened to kill her, put his hand in the shape of a gun. He further threatened to kill Officer Joseph Hoffman and Officer Robert Fedor. Later, MDJ Olasz was leaving the hearing. As he walked by the police car where [Appellant] was being held, [Appellant] threatened Judge Olasz and said that he would kill him as well. At this time he was currently at preliminary hearing facing charges of felonies of a first degree for a prior assault on Michelle Simpson. While in the police car [Appellant] was handcuffed, however, he was able to remove his hands from a handcuff. During that time Officer Joseph Hoffman and Officer Robert Fedor were present. [Appellant] physically resisted their arrest resulting in them deploying their Tasers at him. Further, while [Appellant] was in the police car he did defecate and damage the police car with the feces.

Moving on to [CP-02-CR-0013238-2015,] had this matter proceeded to trial, the Commonwealth would have called witnesses from the City of McKeesport Police Department, as well as the victim in this matter, Michelle Simpson. Had this matter proceeded to trial, the testimony would have been heard that on or about September 5, 2015, that [Appellant] physically assaulted Michelle Simpson with a firearm, striking her in the face with it. Further, he threatened both her and her 7-year-old daughter who was asleep on the couch with her with the firearm, threatening to kill both of them.

\* \* \*

[H]ad [CP-02-CR-0013275-2015] proceeded to trial on . . . three . . . counts of terroristic threats, the Commonwealth would have called officers from the West Mifflin Borough Police Department, as well as the victim in this matter, Michelle Simpson, as well as Jason Steward. Here testimony would have been heard that on or about September 6, 2015, that [Appellant] had threatened the three victims, to kill all of them. Mr. Steward was currently in a relationship with Ms. Simpson, and Ms. Simpson's daughter was present when [Appellant] threatened to kill all of them.

N.T., 10/25/16, at 9-15.

The trial court accepted Appellant's *nolo contendere* plea as knowing, voluntary and intelligent, adding that Appellant could receive a maximum of 203 years' imprisonment. ***Id.*** at 15.

On April 26, 2017, Appellant appeared for sentencing. At the beginning of the hearing, defense counsel, Carl Marcus, Esquire, informed the court that both he and Appellant wished for Attorney Marcus to withdraw from representation, and that Attorney Marcus had filed a motion to withdraw. The following exchange ensued:

The Court: Okay. First of all, there is no reason to withdraw until - - there is no petition to withdrawn until after sentencing and

- 4 -

when you put in your appearance you represent a client through the trial and through sentencing.

Mr. Marcus:  I understand.

The Court:  So I'm asking you to represent him through sentencing.  I will appoint someone else if you still wish to withdraw at the end of sentencing.

N.T., 4/26/17, at 3.  Appellant then asked to withdraw his plea as follows:

[Appellant]:  Ms. McDaniels, I will not ---

The Court: Address me as judge is a pretty good place to start.

[Appellant]: Judge McDaniels, I did not enter a guilty plea or a nolo contendere plea of my own free will.  He told me if I entered the plea in January, you would sentence me to two to four years.  I came over here in January, my sentence was postponed until today.  I do not want a guilty plea.  I was coerced.  I didn't enter it on my own free will.

The Court: Well, I've reviewed the transcript and the transcript says that you were not forced or —

[Appellant]: If you sentence me, I'm going to blow your fucking face off.

The Court: Okay.  I will say for the record that in your mitigation, the only thing that I found - -

Deputy Sheriff: You've got to wait until the Judge is done, sir.

The Court: -- is that you did enter a plea of nolo contendere. You apparently as a child - -

[Appellant]: I don't give a flying fuck.  If you sentence me, I'm going to blow your fucking face off and your grandchildren, too.  You fucking, dick-eating bitch, do you not understand that?  I don't have a fuck you about her being no judge.  Do you not understand that?  I will shove a fucking curling iron up your fucking granddaughter's fucking pussy.  Do you understand me?

The Court: Okay. [Appellant] will be removed from the courtroom for obvious reasons. I'll let you know what your sentence is.

[Appellant]: Suck my dick you fucking bitch.

The Court: Well, I would rather not.

*Id.* at 3-4. The trial court then imposed the sentence described above.

On May 4, 2017, through Attorney Marcus, Appellant filed post-sentence motions. Subsequently, through new counsel, Appellant filed amended post-sentence motions. On August 31, 2017, the trial court denied post-sentence relief. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises two issues in this appeal:

1. Whether the trial court erred in denying [Appellant's] oral, pre-sentencing request to withdraw his pleas of *nolo contendere*?

2. Whether the trial court's aggregate sentence of twenty-five (25) to fifty (50) years of incarceration was manifestly excessive and an abuse of discretion?

Appellant's Brief at 5.

Courts treat motions to withdraw *nolo contendere* pleas in the same manner as motions to withdraw guilty pleas. *Commonwealth v. Miller*, 748 A.2d 733, 735 (Pa. Super. 2000). Thus, as is the case when we review an order denying a motion to withdraw a guilty plea, "we will not disturb the court's decision on such motion unless the court abused that discretion." *Commonwealth v. Gordy*, 73 A.3d 620, 624 (Pa. Super. 2013). When the defendant moves to withdraw his *nolo* plea before sentencing, "[a]lthough

- 6 -

there is no absolute right to withdraw a [*nolo*] plea . . . it is clear that a request made [b]efore sentencing . . . should be liberally allowed." ***Commonwealth v. Forbes***, 299 A.2d 268, 271 (Pa. 1973). Further, "[i]f the trial court finds any fair and just reason, withdrawal of the plea before sentence should be freely permitted, unless the prosecution [will be] substantially prejudiced." ***Id.***

In ***Commonwealth v. Carrasquillo***, 115 A.3d 1284 (Pa. 2015), our Supreme Court, breaking from prior precedent, held that a bare assertion of innocence is no longer a fair and just reason permitting a pre-sentence withdrawal of a guilty plea. Instead, "a defendant's innocence claim must be at least plausible to demonstrate, in and of itself, a fair and just reason for presentence withdrawal of a plea." ***Id.***, 115 A.3d at 1292. The accused must make "some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice." ***Id.***

Just as bare assertions of innocence no longer provide sufficient reason to withdraw a guilty plea prior to sentencing, neither do Appellant's bare assertions of "coercion" entitle him to pre-sentence withdrawal of his *nolo* plea in the case at bar. Appellant made an unsupported claim that his attorney "coerced" him into a *nolo* plea, and when the court began to express its disagreement, he interrupted with a string of vile epithets and threats toward the court. Through his own misconduct, Appellant prevented the court from conducting a proper or rational evidentiary hearing on his motion. The court

properly exercised its discretion under these circumstances to proceed with sentencing.

In his second argument, Appellant contends that the trial court abused its discretion by imposing an aggregate sentence of 25-50 years' imprisonment. Appellant presents a challenge to the discretionary aspects of sentence.

"A challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right." *Commonwealth v. Grays*, 167 A.3d 793, 815 (Pa. Super. 2017). Before we can reach the merits of a discretionary aspects challenge,

> [w]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* [Pa.R.Crim.P. 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id.* at 815–16. Here, Appellant filed a timely notice of appeal, preserved this issue in post-sentence motions, and included a statement in his brief in compliance with Pa.R.A.P. 2119(f). Therefore, we must determine whether Appellant has presented a substantial question that his sentence is not appropriate under the Sentencing Code.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa. Super. 2015) (*en banc*). "While a bald claim of excessiveness

does not present a substantial question for review, a claim that the sentence is manifestly excessive, inflicting too severe a punishment, does present a substantial question." *Commonwealth v. Haynes*, 125 A.3d 800, 807–08 (Pa. Super. 2015). Therefore, we shall consider the merits of Appellant's sentencing issue.

"In reviewing a challenge to the discretionary aspects of sentencing, we evaluate the court's decision under an abuse of discretion standard." *Commonwealth v. Stokes*, 38 A.3d 846, 858 (Pa. Super. 2011). Further, "this Court's review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S.[A.] § 9781(c) and (d)." *Commonwealth v. Macias*, 968 A.2d 773, 776–77 (Pa. Super. 2009). Section 9781(c) directs:

> The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
> (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
>
> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
>
> (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.
>
> In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S.A. § 9781(c).

Section 9781(d) directs that the appellate court, in reviewing the record, shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

In the present case, Appellant committed a pattern of violent and disturbing crimes, including (1) pointing a firearm at various victims; (2) repeatedly threatening to kill his girlfriend, her little daughter, police officers, and the judge who presided over his preliminary hearing; (3) striking his girlfriend with a firearm; (4) resisting arrest, and (5) defecating in a police vehicle. His prior criminal history is lengthy as well. The trial court summarized Appellant's background as follows:

[Appellant's] prior [offenses] start[ed] in 2002 . . . with the charge of possession with intent to deliver; a 2002 escape; 2002, institutional vandalism; 2004, possession with intent to deliver where he was sentenced to 4 to 8 years and maxed out, was released from custody March 14th, of 2015; in 2015, there was a conviction for flight, an additional conviction for open lewdness. [Appellant] was in the community having been released from the state correctional institution for approximately six months before the instant arrest. His prior offenses began in [19]99 when he was convicted of three counts of robbery and one count of escape. His juvenile record began at age 12 and throughout his teenage years he was in a series of placements through the juvenile court facility, and was transferred back and forth because of physical and verbal abuse.

- 10 -

[Appellant] admits to daily drug use. He has no job history. [Appellant] has not done a single thing positive in his life. Family support has been offered a number of times, he always turned his back on it. And apparently he does better when he is in placement and is forced to take his medication. [Appellant] has very little, if any, mitigation in his behalf. He is a dangerous and violent person. He frequently uses drugs and guns in his criminal activity. He is an abuser both of his intimate partner as well as strangers. I feel that he is not a candidate for rehabilitation. He's been in jail both in the state system and the county system and that has not deterred any continued criminal relief. The record will reflect that [Appellant] is not RRRI eligible.

N.T., 4/26/17, at 5-6. Appellant's present and past crimes, along with his shocking behavior at sentencing, establish that he is a violent and unstable individual not susceptible to rehabilitation. Thus, the trial court acted within its discretion in imposing a sentence of 25-50 years' imprisonment.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/16/2018

- 11 -