J-S09031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIANNA N. BARNES | : | |
| | : | |
| Appellant | : | No. 686 EDA 2023 |

Appeal from the Judgment of Sentence Entered January 4, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003264-2022

BEFORE:  PANELLA, P.J.E., NICHOLS, J., and BECK, J.

MEMORANDUM BY BECK, J.:                              **FILED MARCH 27, 2024**

Brianna N. Barnes ("Barnes") appeals from the judgment of sentence imposed by the Philadelphia County Court of Common Pleas after she pled guilty to endangering the welfare of a child ("EWOC") and simple assault.  On appeal, Barnes challenges the discretionary aspects of her sentence.  Because we find no merit to Barnes' claim, we affirm.

The Commonwealth summarized the factual basis for Barnes' guilty plea as follows:

> [I]f the Commonwealth were to proceed to trial, we would present testimony by Dr. Norrelle Atkinson, who is the chief of St. Christopher's Hospital's Child Protection Team and an expert in child abuse pediatrics, that a child by the name of [M.S.] was seen at St. Christopher's Hospital in November of 2021 when she was four months old.  Her examination of the child yielded the following findings:
>
> Two acute cephalohematomas to the [] left parietal bone, multiple healing fractures in different stages of healing, to include

healing fractures to the sixth rib, healing fractures to the right posterior seventh and tenth ribs, healing fracture of the left posterior ninth rib, healing fracture of the left posterior tenth rib, [aplastic] metaphyseal lesion fracture to the distal femurs, possible metaphyseal fracture to the left proximal tibia, possible healing fractures to the clavicles, and multiple healing pattern scars to the chin and neck.

Further, Dr. Atkinson would have testified that any fracture in a non-mobile infant is concerning for inflicted trauma and that this concern for abuse increases when there are multiple fractures to specific regions of the body that are in different stages of healing.

Rib fractures in particular are highly correlated with abusive injury in infants. Metaphyseal fractures are highly specific for physical abuse.

The clinical evaluation did not suggest any medical problems that would cause her to fracture more easily than any other infant.

[M.S.]'s multiple pattern scars were too extensive for an infant to cause to themselves, even if the infant has long nails, and Dr. Atkinson opined that these injuries are inflicted.

Dr. Atkinson gathered history from the child's primary caregiver, [] Barnes, [] and no history was provided to account for any of [M.S.]'s injuries. And in the absence of such, her presentation is most consistent with a diagnosis of child physical abuse.

N.T., 9/6/22, at 6-8.

Barnes was arrested and charged with EWOC, simple assault, recklessly endangering another person ("REAP"), and aggravated assault.[1] Barnes entered an open guilty plea to the EWOC and simple assault charges; in exchange, the Commonwealth nolle prossed the remaining charges. The trial

_____

[1] 18 Pa.C.S. §§ 4304(a)(1), 2701(a), 2705, 2702(a)(9).

court sentenced Barnes to a term of two to four years of incarceration followed by five years of probation on the EWOC charge and no further penalty on the simple assault charge. Barnes filed a post-sentence motion to modify her sentence, which the trial court granted. After a reconsideration hearing on November 14, 2022, the resentencing court vacated Barnes' sentence, and on January 4, 2023, imposed a new sentence of two to four years of incarceration followed by two years of probation.[2] On January 9, 2023, Barnes timely filed a post-sentence motion to modify her new sentence. On March 1, 2023, the clerk of courts entered an order denying the post-sentence motion by operation of law.[3] This appeal followed.

_____

[2] The Honorable Robert Coleman presided over the sentencing hearing. He later retired and the Honorable Crystal Bryant Powell presided over the reconsideration and resentencing hearings. **See** N.T., 11/14/2022, at 4.

[3] We note that the clerk of courts prematurely entered the order denying the post-sentence motion by operation of law. The post-sentence motion was filed on January 9, 2023 and therefore would have been denied by operation of law on May 9, 2023. **See** Pa.R.Crim.P. 720(B)(3)(a), (c) (stating that a trial court must decide a post-sentence motion within 120 days, and if a judge fails to decide it within 120 days, the motion is deemed denied by operation of law, at which point the clerk of courts shall forthwith enter an order on behalf of the court stating that the motion is deemed denied). Although this results in Barnes' March 14, 2023 appeal being premature, we conclude that this amounts to a breakdown in the trial court processes. **See Commonwealth v. Perry**, 820 A.2d 734, 735 (Pa. Super. 2003) (stating that "where the Clerk of Courts does not follow the Rules of Criminal Procedure, such constitutes a breakdown in the lower court's processes")). Barnes filed a notice of appeal within thirty days of the order denying the post-sentence motion by operation of law. **See** Pa.R.Crim.P. 720(A)(2)(b) (stating a notice of appeal must be filed within thirty days of the entry of the order denying the motion by operation of law). Therefore, we will address this appeal.

On appeal, Barnes presents the following issue for our review: "Did the lower court err by imposing a manifestly excessive and unreasonable sentence where the sentence was based solely on the seriousness of the crime and the lower court ignored the significant mitigation presented at the sentencing hearing?" Barnes' Brief at 3.

Barnes challenges the discretionary aspects of her sentence.[4] *See Commonwealth v. Moury*, 992 A.2d 162, 169 (Pa. Super. 2010) (a claim that the sentencing court failed to consider mitigating factors is a challenge to the discretionary aspects of sentencing). "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. Baker*, --- A.3d ---, 2024 WL 505083 at *4 (Pa. Super. Feb. 9, 2024) (citation omitted). For a challenge to the discretionary aspects of a sentence,

> [w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Baker*, --- A.3d ---, 2024 WL 505083 at *4 (citation and brackets omitted).

---

[4] We note that when a defendant enters an open guilty plea, she may challenge the discretionary aspects of the sentence imposed. *See Commonwealth v. Brown*, 240 A.3d 970, 972 (Pa. Super. 2020).

- 4 -

Barnes satisfied the first three requirements of the four-part test by filing a timely notice of appeal, having raised the issue in her post-sentence motion, and including a Pa.R.A.P. 2119(f) statement in her appellate brief. *See* Notice of Appeal, 3/14/2023; Post-Sentence Motion, 1/9/2023; Barnes' Brief at 13-15. We must therefore determine if Barnes has raised a substantial question for review.

We evaluate what constitutes a substantial question on a case-by-case basis. **Commonwealth v. Paul**, 925 A.2d 825, 828 (Pa. Super. 2007). We have found that a substantial question exists "when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Phillips**, 946 A.2d 103, 112 (Pa. Super. 2008) (citation omitted).

Barnes argues that the trial court "imposed a manifestly excessive sentence, inflicting too severe a punishment." Barnes' Brief at 14. She contends that, when the trial court "imposed a sentence near the top of the aggravated guideline range," it "failed to consider the substantial mitigation presented at the sentencing hearing or [] Barnes' rehabilitative needs, focusing instead on the extent of the injury to the victim." **Id.** Specifically, Barnes claims the trial court was dismissive of evidence of Barnes' "troubled childhood, her lack of positive female role models, and the death of her

- 5 -

grandmother," and fixated on the severity of her offense. *Id.* at 15. According to Barnes, this failure "resulted in a clearly unreasonable, manifestly excessive sentence" in violation of section 9721(b) of the Sentencing Code, 42 Pa.C.S. § 9721(b). Barnes' Brief at 14-15.

Barnes' claim raises a substantial question for our review. *Commonwealth v. Haynes*, 125 A.3d 800, 808 (Pa. Super. 2015) (holding that claim that a sentence is manifestly excessive by inflicting too severe a punishment raises a substantial question); *Commonwealth v. Swope*, 123 A.3d 333, 339 (Pa. Super. 2015) (noting that an excessive sentence claim, in conjunction with a claim that the trial court failed to consider mitigating factors, raises a substantial question). Accordingly, we will consider the merits of Barnes' claim.

Our standard of review of a challenge to the discretionary aspects of a sentence is well settled.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Baker*, --- A.3d ---, 2024 WL 505083 at *4 (citation omitted). In reviewing the record, this Court must "consider the nature and circumstances of the crime; the history and characteristics of the defendant; the sentencing court's

findings as well as the court's opportunity to observe the defendant, including through presentence investigation; and the sentencing guidelines." *Id.* at *5 (citing 42 Pa.C.S. § 9781(d)).

Sentencing courts must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). "The balancing of these [s]ection 9721(b) sentencing factors is within the sole province of the sentencing court." *Baker*, --- A.3d ---, 2024 WL 505083 at *4 (citation omitted). "[T]he weight accorded to the mitigating factors or aggravating factors presented to the sentencing court is within the court's exclusive domain." *Id.* (citation omitted). When a sentencing court possesses a pre-sentence investigation report, "it is presumed the court was aware of and weighed all relevant information contained in the report[,] along with any mitigating sentencing factors." *Id.* (citation, quotation marks, and some brackets omitted). "The sentencing court must also consider the sentencing guidelines when sentencing a defendant." *Id.* (citing 42 Pa.C.S. § 9721(b)).

Barnes argues that the trial court abused its discretion in imposing a sentence in the aggravated guideline range given Barnes' "unstable and troubled childhood, her acceptance of responsibility, her remorse, and her amenity to rehabilitation." Barnes' Brief at 17. According to Barnes, the trial court focused solely on the impact on the infant and failed to take into account

significant mitigating evidence that Barnes was abandoned by her biological parents at a young age; that shortly after her grandparents took custody of her, her grandmother passed away; she became involved in two profoundly negative romantic relationships as a teenager, one of which became physically abusive; she was overwhelmed when her daughter was born; and she lacked positive female role models. *Id.* at 18. Barnes further argues the trial court ignored other circumstances: Barnes' availing herself of a parenting program, regularly meeting with her social worker, and maintaining employment while incarcerated; her acceptance of responsibility by entering an open guilty plea; and her expression of genuine remorse during allocution. *Id.* at 18-19. According to Barnes, the trial court reviewed her pre-sentence investigation report only as a "perfunctory exercise" and dismissed her mitigating evidence in a single sentence: "I'm sorry for what happened in your background, but I can't take that back." *Id.* at 19 (citation omitted). Barnes also cites the trial court's statements at the reconsideration and resentencing hearings as evidence that the trial court focused exclusively on the seriousness of the offense while "paying mere lip service" to Barnes' mitigating and rehabilitative circumstances. *Id.* at 21-22.

Although Barnes does not recognize it in making her argument, the law is clear that when a sentence is vacated, the "resentencing judge should start afresh." ***Commonwealth v. Serrano***, 150 A.3d 470, 473 (Pa. Super. 2016) (citation omitted). "Reimposing a judgment of sentence should not be a

mechanical exercise." ***Id.*** (citation omitted). This directive is "particularly salient where … the resentencing judge did not preside over the defendant's previous sentencing proceeding," as the judge must familiarize herself "with the defendant, the offense, and the attendant circumstances of the case." ***Id.*** at 473-74. The record reflects that in resentencing Barnes, the new sentencing court did just that.

In vacating Barnes' sentence at the reconsideration hearing, the resentencing judge considered Barnes' mitigation report attached to her motion for reconsideration as well as the Commonwealth's sentencing memorandum and sentencing guidelines. N.T., 11/14/2022, at 5-8, 16. The court heard argument from both counsel as to the differences in the types of services available to Barnes while incarcerated in county versus state facilities and specifically ordered Barnes to a state facility so that she could take advantage of the services provided there. ***Id.*** 19-22; N.T., 1/4/2023, at 29. In considering Barnes' rehabilitative needs, the resentencing judge stated:

> Probation needs to check for the trauma treatment that she needs and the anger management and the – any parenting guidance she needs. Probation needs to check for that. Because I want her to – I want her to complete significant trauma therapy, parenting, and anger therapy, management, whatever it is, within the first year of probation, if she hasn't already.

N.T., 11/14/2022, at 28-29; ***see also id.*** at 26 (resentencing judge stating "I would like her to get treatment for herself and her – for her to have a … productive life herself").

Further, the record reflects that the resentencing judge was familiar with specific mitigating factors identified by Barnes, including, inter alia, Barnes' troubled upbringing and lack of support. *Id.* at 20-21 (resentencing judge stating Barnes is "a young lady that – she never really had an upbringing herself"); *see also id.* at 24-25 (defense counsel referring to Barnes' mitigation report indicating she was the primary support for the infant and, in balancing the infant's care and her job, had to leave the child with family members who were not well equipped to care for an infant).

The record also reflects that the resentencing judge heard the facts recited at Barnes' guilty plea hearing, was aware of the sentencing guidelines, and acknowledged the existence of an aggravating factor—that the infant was injured "over a course of time" and that the injuries were not isolated to a single incident. N.T., 1/4/2023, at 16-17. In imposing a new (and lesser) sentence of two to four years of incarceration followed by two years of probation, the resentencing judge concluded by stating to Barnes: "I want you to take advantage of the programs. I want you to really get an understanding of what occurred, especially since your parental rights may very well lead to real custody again.… And the way you show what you've understood is by certain programs, certain certificates, completing." *Id.* at 31.

Based on the foregoing, it is apparent that the resentencing judge considered Barnes' mitigating evidence and rehabilitative needs when entering the sentence it did, but found they were outweighed by the seriousness of the

offense. The record confirms that the resentencing judge had familiarized herself with Barnes, the nature of the offenses, the attendant circumstances of the case, and the sentencing guidelines; she did not simply mechanically reimpose the same sentence, but instead imposed a different and lesser sentence. *Serrano*, 150 A.3d at 473-74. We discern no abuse of discretion and accordingly, affirm Barnes' judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  3/27/2024