J-S55041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS REIBER | : | |
| | : | |
| Appellant | : | No. 820 WDA 2019 |

Appeal from the Judgment of Sentence Entered March 29, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0005993-2015

BEFORE:   MURRAY, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED NOVEMBER 19, 2019**

Appellant, Thomas Reiber, appeals from the aggregate judgment of sentence of eight years and 212 days to 15 years and 212 days of confinement, of which 577 days was immediately credited for time served, resulting in a period of incarceration of seven to fourteen years.  This sentence was imposed after the revocation of his state intermediate punishment ("SIP") for three counts of endangering welfare of children ("EWOC").[1]  We affirm on the basis of the trial court opinion.

On May 3, 2015, Appellant's three-month-old baby died, because he left the infant and a three-year-old child in the care of a six-year-old child, while he took drugs.  Appellant was already serving probation pursuant to at least

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 4304(a)(1) (parent, guardian or other person supervising the welfare of a child under 18 years of age commits offense).

seven different dockets since 2011 and was a participant in Allegheny County's Mental Health Court at the time his infant died. During his entire probationary period, Appellant struggled with drug abuse and mental health issues.

On February 2, 2016, Appellant pleaded guilty to the aforementioned charges. On August 30, 2016, he was sentenced to six years in SIP.

Following hearings on March 20 and 29, 2018, the trial court found Appellant had violated the terms of his SIP sentence and resentenced him to 577 days of confinement with immediate parole for the first count of EWOC and 3½ to 7 years of confinement for each of the other two EWOC counts. Order of Sentence – Revocation, 3/29/2018, at 1. These sentences were to be served consecutively to each other, for an aggregate judgment of sentence of seven years and 577 days to 14 years and 577 days of confinement – or eight years and 212 days to 15 years and 212 days of confinement, if 365 of the days from the 577 days are converted into a year. *Id.* As Appellant was immediately paroled on the first count, he would actually be serving seven to fourteen years of confinement.

At the conclusion of the second hearing, Appellant requested a new attorney, which the trial court granted. N.T., 3/29/2018, at 4; Order of Court, 3/29/2019. Appellant's new counsel filed an untimely notice of appeal, and this Court quashed that appeal.

On May 17, 2019, Appellant filed a counseled, timely petition pursuant to the Post Conviction Relief Act ("PCRA"),[2] requesting that his direct appeal rights be reinstated *nunc pro tunc*. PCRA Petition, 5/17/2019, at 5. The PCRA court granted Appellant's petition and reinstated his right to file a post-sentence motion and his direct appeal rights. On May 24, 2019, Appellant filed a post-sentence motion challenging the discretionary aspects of his sentence, which the trial court denied on May 30, 2019. On June 4, 2019, Appellant filed this timely direct appeal.[3]

Appellant presents the following issue for our review:

> Did the trial court err in denying Appellant's post sentencing motions since the imposition of two statutory maximum sentences for [EWOC] (3.5 to 7 years' imprisonment at each count, for an aggregate sentence of 7-14 years' imprisonment, for a probation violation and revocation regarding Appellant's original sentence of [SIP] was manifestly excessive, unreasonable, and an abuse of discretion pursuant to 42 Pa.C.S. § 9771 (c), and not in conformity with the Sentencing Code. The trial court failed to provide adequate reasons for imposing sentences above the aggravated range of the guidelines, and failed to take into account Appellant's rehabilitative needs, his background, the circumstances of the crimes or the minimal need for public protection in this case; Appellant's crimes were the result of his drug addiction and mental illness, and the trial court focused primarily on Appellant's drug addiction?

Appellant's Brief at 3 (unnecessary capitalization omitted).

---

[2] 42 Pa.C.S. §§ 9541–9546.

[3] Appellant simultaneously filed his statement of errors complained of on appeal. On August 2, 2019, the trial court entered an order stating that its opinion dated October 26, 2018, would serve as its opinion pursuant to Pa.R.A.P. 1925(a).

Preliminarily, we recognize . . . that Appellant's SIP sentence was analogous to a sentence of probation. We review a sentence imposed following a revocation of probation for an error of law or an abuse of discretion. Accordingly, we apply that same standard in reviewing revocation of Appellant's SIP sentence.

*Commonwealth v. Flowers*, 149 A.3d 867, 872–73 (Pa. Super. 2016) (citations omitted).

[A]n abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Lekka*, 210 A.3d 343, 350 (Pa. Super. 2019) (citation omitted).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue[, w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Manivannan*, 186 A.3d 472, 489 (Pa. Super. 2018) (quotation marks and some citations omitted), *reargument denied* (July 7, 2018). In the current case, Appellant filed a timely notice of appeal, preserved his issue in a post-sentence motion, and included a statement in his brief pursuant to Pa.R.A.P. 2119(f). Appellant's Brief at 9-12.

The final requirement, whether the question raised by Appellant is a substantial question meriting our discretionary review, "must be evaluated on

- 4 -

a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Manivannan*, 186 A.3d at 489 (quotation marks and some citations omitted).

The Rule 2119(f) statement sets forth the claims that the sentencing court failed to consider the factors set forth in 42 Pa.C.S. § 9721(b)[4] and that his sentence is manifestly excessive in light of the conduct at issue. Appellant's argument therefore raises a substantial question. *See Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1266 (Pa. Super. 2014) (*en banc*) ("[a]rguments that the sentencing court failed to consider the factors proffered in 42 Pa.C.S. § 9721 does present a substantial question" (citation omitted)); *Commonwealth v. Dodge*, 77 A.3d 1263, 1266-67, 1270-71, 1273 (Pa. Super. 2013) (claim that a sentence is excessive in light of the conduct at issue raises a substantial question); *Commonwealth v. Ferguson*, 893 A.2d 735, 737 (Pa. Super. 2006) (appellant "presented a statement of reasons for allowance of appeal arguing that . . . his sentence of

---

[4] Section 9721(b) requires the sentencing court to "follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant."

total confinement" was "manifestly excessive"; this Court concluded that this issue "present[ed] substantial questions for [its] review"). Hence, we will consider the substantive merits of his sentencing claim.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Beth A. Lazzara, we conclude Appellant's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of that question. *See* Trial Court Opinion, filed October 26, 2018, at 4–21 (finding: (I) the trial court did not abuse its discretion when it imposed Appellant's sentence, because the sentence was a product of various considerations and was justified by the totality of the circumstances, which include (A) the seriousness of his offense conduct, (B) the impact it had on his surviving children and his family, and (C) that Appellant (1) had been on probation since 2011, (2) was already a participant in Allegheny County's Mental Health Court at the time he committed these three EWOC counts, and (3) had suffered from drug addiction and mental illness throughout the entire time he was serving probation; (II) as the trial court considered all of these circumstances when it imposed sentence, "to suggest that th[e] court failed to give adequate consideration to [Appellant]'s rehabilitative needs when it imposed the aggregate sentence is completely unfounded . . . considering that not even the death of his own newborn was enough to usher him down the path of sobriety"; (III) based on the nature of Appellant's crime and his overall history with the court,

consecutive sentences of total confinement were neither manifestly excessive nor unreasonable).

Accordingly, we cannot find that the trial court arrived at an unreasonable decision, and Appellant has failed to demonstrate an error of law or a manifest abuse of discretion. *See Lekka*, 210 A.3d at 350; *Flowers*, 149 A.3d 867, 872–73. We thereby will not disturb Appellant's sentence on appeal, and we thus affirm on the basis of the trial court's opinion. The parties are instructed to attach the opinion of the trial court dated October 26, 2018 to any filings referencing this Court's decision.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/2019

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,

v.

THOMAS REIBER,

Defendant.

CC No. 2015-5993

OPINION

ORIGINAL
Criminal Division
Dept. Of Court Records
Allegheny County, PA

BETH A. LAZZARA, JUDGE
Court of Common Pleas

Copies Sent To:

Mike W. Streily, Esq.
Office of the District Attorney
401 Courthouse
Pittsburgh, PA 15219

Suzanne Swan, Esq.
310 Grant Street, Suite 823
Pittsburgh, PA 15219

ALLEGHENY COUNTY, PA
CRIMINAL DIVISION
DEPT. OF COURT RECORDS

2018 OCT 26 PM 12: 41

FILED

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,     CRIMINAL DIVISION

vs.                               CC No. 2015-5993

THOMAS REIBER,

Defendant.

## OPINION

This is a direct appeal from the judgment of sentence entered on March 29, 2018, following a resentencing hearing that was held on March 20, 2018, and March 29, 2018. The Defendant was resentenced following his termination from the State Intermediate Punishment (SIP) Program for non-compliance. On March 20, 2018, the court resentenced the Defendant to a period of three and a half (3 ½) to seven (7) years of imprisonment at Count Two (2) of the above-captioned case, and a consecutive period of three and a half (3 ½) to seven (7) years of imprisonment at Count Three (3). The Defendant received 577 days of credit for time served. The Defendant also was ordered to have no contact with the minor victims and their custodians. On March 29, 2018, the Defendant was deemed to be ineligible for RRRI.

1

Counsel for the Defendant subsequently sought leave to withdraw from representation. On March 29, 2018, the court granted counsel's request and appointed new counsel. Timely post-sentence motions seeking a modification of the Defendant's sentence were filed on March 22, 2018[1] and May 4, 2018. The motions were heard and denied on June 27, 2018.

A Notice of Appeal was filed on July 27, 2018. The Defendant was directed to file a Concise Statement of Errors Complained of on Appeal ("Concise Statement") pursuant to Pa.R.A.P. 1925(b) no later than August 27, 2018. On August 15, 2018, Counsel filed a timely Concise Statement, raising the following allegations of error on appeal:

a. The lower court erred in imposing a sentence that is manifestly unjust, unreasonable, and excessive. Moreover, the sentence imposed is contrary to the Sentencing Code, and the fundamental norms underlying the sentencing process in that the court failed to consider and apply all of the required sentencing factors under 42 Pa.C.S. §9721 and 42 Pa. C.S. §9725. The sentence imposed fails to adequately consider the rehabilitative needs of Mr. Reiber as his conduct in this situation was the result of mental health conditions, which were made worse by a drug addiction. Mr. Reiber needs to be treated for his mental health issues and substance abuse problems. Mr. Reiber is not a continuing danger to the victims and has shown marked changes in clarity and understanding since his incarceration. He was making progress in the intermediate punishment program for a period of time; however, relapses are not uncommon during treatment. While some degree of incarceration is appropriate, 7 to 14 years is lengthy for someone whose conduct is not the result of just bad behavior, but mental illness and drug addiction. When crafting a sentence, a Court must consider the serious nature of the offense but also

---

[1] The March 22, 2018 post-sentence motion was filed by Attorney Brandon Herring before he sought leave to withdraw from the case. The Defendant's new attorney, Suzanne Swan, was provided an opportunity to file an amended post-sentence motion following her appointment to the case.

2

the impact on the community and the rehabilitative needs of the defendant. The sentence of 7 to 14 years does not adequately reflect those factors where these acts were motivated by mental illness and drug abuse, not malice.

b. The court abused its discretion in imposing a manifestly excessive and unreasonable sentence in violation of the Sentencing Code insofar as it did not set forth on the record any statement of its reasons at all for deviating from the sentencing guidelines, specifically for imposing sentences above the aggravated range at two counts. Mr. Reiber admits that he did not properly care for his children due to his drug addiction. He suffered a great loss as a result of his neglect. He was not verbally or violently abusive towards his children. He has no history of aggressive behavior towards anyone. The sentence does not reflect any consideration of Mr. Reiber's background and characteristics, his mental health treatment needs and his drug rehabilitation needs, the circumstances of the crime, and the need for public protection. The court's failure to do so resulted in a manifestly excessive and unreasonable sentence that was contrary to the sentencing code and contrary to the fundamental norms underlying the sentencing process.

c. The court's imposition of two consecutive statutory maximum sentences was unreasonable and manifestly excessive because it was grossly disproportionate to the circumstances of the case. The focus on Mr. Reiber's drug addiction and/or recidivism did not account for the whole picture and did not account for an adequate assessment of Mr. Reiber's rehabilitative needs.

(Concise Statement, pp. 2-3).

The Defendant's allegations of error on appeal are without merit. The court respectfully requests that the Defendant's sentences be upheld for the reasons that follow.

3

## I. DISCUSSION

**This court did not abuse its discretion when it imposed an aggregate sentence of seven (7) to fourteen (14) years of imprisonment because the sentence was a product of various considerations and was justified by the totality of the circumstances.**

The Defendant's contentions on appeal challenge the discretionary aspects of his sentence. The court notes that "[t]he right to appeal a discretionary aspect of sentence is not absolute." Commonwealth v. Martin, 727 A.2d 1136, 1143 (Pa. Super. 1999). A defendant "challenging the discretionary aspects of [the] sentence must invoke [appellate] jurisdiction by satisfying a four-part test." Commonwealth v. Moury, 992 A.2d 162, 170 (Pa. Super. 2010). In applying the four-part test, the appellate court analyzes

> (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [708]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa. C. S. A. § 9781(b).

Id. at 170. "The determination of whether there is a substantial question is made on a case-by-case basis, and [the appellate court] will grant the appeal only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." Commonwealth v. Haynes, 125 A.3d 800, 807 (Pa. Super. 2015).

4

In arguing that the aggregate sentence was manifestly excessive, the Defendant claims that this court did not give adequate consideration to his rehabilitative needs and also failed to properly give consideration to his mental health and substance abuse issues. (Concise Statement, pp. 2-3). Our courts have "held on numerous occasions that a claim of inadequate consideration of [mitigating] factors does not raise a substantial question for [] review." Haynes, *supra*, at 807; Commonwealth v. Buterbaugh, 91 A.3d 1247, 1266 (Pa. Super. 2014). This court respectfully requests that the reviewing court find that the Defendant has failed to raise a substantial question for review of his sentence. The Defendant's sentence was consistent with the sentencing provisions of the Sentencing Code, and it did not conflict with the fundamental norms that underlie the sentencing process. However, should the reviewing court conclude that there exists a substantial question as to the appropriateness of the sentence, the Defendant's challenge to his sentence nevertheless fails on the merits.

It is well-established that an abuse of discretion is more than an error in judgment; a sentencing court has not abused its discretion "unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." Commonwealth v. Smith, 673 A.2d 893, 895 (Pa. 1996). "In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion." Commonwealth v. Mouzon, 828 A.2d 1126, 1128 (Pa. Super. 2003). This deferential standard of review acknowledges that the sentencing court is "in the best position to view the defendant's character, displays

5

of remorse, defiance, indifference, and the overall effect and nature of the crime." Commonwealth v. Allen, 24 A.3d 1058, 1065 (Pa. Super. 2011) (internal citations omitted).

Contrary to the Defendant's contentions, the Defendant's aggregate sentence was a product of many considerations, and the sentence was not manifestly excessive given the totality of the circumstances. As an initial matter, the court notes that it is well familiar with the Defendant because he had been on this court's probation since October 17, 2011, and he was a Mental Health Court ("MHC") participant at the time of the horrific incident which resulted in his convictions at the above-captioned case. The Defendant struggled with substance abuse, and, to a more limited extent, mental health issues the entire time that he was on this court's probation.

By way of background, which is essential to understanding the court's rationale for the sentence imposed, the Defendant first had contact with this court on October 17, 2011, when he pled guilty to a simple possession charge at CC# 2011-9005. He was placed on a six (6) month term of probation and was to comply with any and all recommendations of a court-ordered drug and alcohol evaluation. However, on March 7, 2012, before he had completed his probationary sentence, the Defendant was detained because he had acquired new charges of burglary, theft by unlawful taking and receiving stolen property at CC# 2012-3804. (Court Exhibit 1). After the burglary charge was dismissed following the Defendant's successful Petition for Habeas Corpus,

6

this court, on the Defendant's motion, transferred the Defendant's detainer to ACTA, an alternative housing program focusedg on drug and alcohol treatment. (Court Exhibit 2). The Defendant was transferred to the program on May 23, 2012. (Court Exhibit 2).

The Defendant pled guilty to the remaining charges at CC# 2012-3804 on July 17, 2012. He was sentenced to two (2) years of probation. His detainer at CC# 2011-9005 was not lifted at that time so that he could complete more of the ACTA program. He had only been in the program for less than two (2) months, and he needed another five (5) weeks to complete the drug and alcohol treatment portion of the program. Unfortunately, on July 19, 2012, only two (2) days after his guilty plea, he was revoked back to the Allegheny County Jail (ACJ) due to suboxone use while in the ACTA program. (Courts Exhibit 3 and 4). The Defendant spent another two (2) months in the ACJ, until September 25, 2012, when his detainer was lifted, and his probation at CC# 2011-9005 was closed. (Court Exhibit 5).

Unfortunately, the Defendant continued to struggle with drug use, and he again acquired new charges for identity theft, *inter alia*, which were filed at CC# 2013-5200. The offense date for these charges was March 27, 2013, and a detainer was lodged that same day. (Court Exhibit 6). The detainer subsequently was lifted on May 24, 2013, upon motion of counsel. (Court Exhibit 7). When the Defendant appeared for court on October 23, 2013 to address his new charges at CC# 2013-5200, he was under the influence of illegal substances. (Court Exhibit 8). His positive drug test came

7

during the time he was a patient at the Discovery House outpatient treatment facility, which specializes in the treatment of opiate addiction. (Court Exhibit 9). The Defendant's bond was revoked, and he was incarcerated again in the ACJ. (Court Exhibit 10). He ultimately was sentenced on this new charge on November 19, 2013, after pleading guilty. He was given 60-120 days of incarceration, with credit for time served and immediate parole. He was also given three (3) years of probation, with requirements to have a drug and alcohol evaluation and to comply with treatment recommendations, as well as continue with, and comply with, mental health treatment. On that same date, the Defendant's probation at CC# 2012-3804 was revoked, and he was given a new two (2) year period of probation to run concurrent with the case at CC# 2013-5200. His detainers at CC# 2012-3804 and CC# 2013-5200 were also lifted on November 19, 2013, and he was released from the ACJ that day. (Court Exhibit 11, p. 4).

On November 21, 2013, just two (2) days after his sentencing hearing, the Defendant *again* obtained new criminal charges, which were originally charged as two (2) cases of simple assault at OTN-G662376-1. (Court Exhibit 11, pp. 2-4). Both charges, one of which involved allegations of assault against his children's mother, were reduced to summary offenses, and he pled guilty on both cases before a magisterial district judge on January 16, 2014. (Court Exhibit 11, pp. 2-3). Probation visited him on December 11, 2013 and warned him not to incur any additional attributable charges or he would again face detention. (Court Exhibit 11, p. 4). However, on January 17, 2014, the day after his plea hearing before the magistrate judge, a probation visit revealed that

8

the Defendant was again using drugs. (Court Exhibit 11, p. 4). He was referred for drug testing and a drug and alcohol evaluation.

On January 18, 2014, just two (2) days after entering his summary pleas, and while on this court's probation at two (2) cases, and only two (2) months after the sentencing on those cases, and one (1) day after probation's visit, the Defendant *again* acquired new criminal charges at CC# 2014-9592. (Court Exhibit 11, pp. 3-4). The case was a retail theft case with an incident date of January 18, 2014. (Court Exhibit 11, pp. 3-4). As promised by probation, the Defendant was again detained at the ACJ on January 19, 2014, due to the new attributable charges. (Court Exhibit 11, p. 4). His detainer was again transferred to alternative housing for drug and alcohol treatment at the Renewal Center on April 29, 2014. (Court Exhibit 11, p. 4). However, less than a month later, on May 13, 2014, the Defendant absconded from Renewal, earning himself an F3 escape charge filed at CC# 2014-9907. (Court Exhibit 11, p. 4). He was returned to the ACJ on July, 8, 2014. (Court Exhibit 11, p. 4).

The Defendant pled guilty and was sentenced through Allegheny County's Phoenix Court on September 22, 2014 to the retail theft charge at case number CC# 2014-9592, and received a six (6) month period of probation. On December 11, 2014, he pled guilty to an M2 Escape charge at CC# 2014-9907. He was sentenced to a period of two (2) years of probation, to be monitored through Allegheny County's Mental Health Court (MHC), which this court oversees. All of his active probation cases were

9

also transferred to MHC, with the requirement that, as a condition of all of his probations, he was to fully and completely comply with all recommendations of his Justice Related Services (JRS) service plan.

The Defendant's JRS service plan provided for release of the Defendant to a recovery house known as Cash Club. While the Defendant was in this 90 day placement, he was to receive drug and alcohol and mental health treatment. At his first MHC review on December 22, 2014, the Defendant was told that a bed was available for him at Cash Club and that he would be released the following week. When he next appeared for a MHC review on January 5, 2015, he was residing at the Cash Club, doing in-house meetings and waiting to get into treatment. During his next review on February 2, 2015, the Defendant proudly related the birth of his baby boy, Caleb, who had arrived on January 26, 2015. The Defendant failed to appear for his next review on March 16, 2015 because he was hospitalized for a seizure. When he was released from the hospital on March 18, 2015, he returned to his home, as Cash Club was not confident that it could meet his medical needs. He reported to MHC for a review on March 23, 2015, at which time his medical condition and his baby's progress were discussed. He returned to Cash Club.

Unfortunately, yet again, the Defendant was arrested on April 4, 2015, for possession of drugs and paraphernalia, at CC# 2015-6460. This occurred after an incident at the Cash Club recovery home in which he was found unconscious on the

floor of the bathroom with a used needle under his body, an empty stamp bag nearby, and six (6) Clonazepam in his pocket. (Court Exhibit 12). His children were present at Cash Club for a visit when this occurred. The Defendant needed to be revived by several Narcan injections and then was taken to the hospital. He returned to Cash Club upon discharge, was immediately enrolled in Intensive Out-patient drug and alcohol therapy (because his admitted use was insufficient for an in-patient D/A admission), and was required to have weekly urines through the Day Reporting Center of probation, and again during his weekly MHC reviews. This was all discussed at a MHC review on April 20, 2015. At his next review on April 27, 2015, the Defendant appeared to be more engaged in his recovery.

However, any true attempt at recovery was short-lived for the Defendant. Police were called to his home on May 3, 2015. He was present there on a pass from Cash Club. The police found a male infant unresponsive in deplorable living conditions, with both parents apparently under the influence of drugs. The child, Caleb, was taken to the hospital, where he was pronounced dead. The Defendant was arrested that same day on three (3) counts of endangering the welfare of children, with charges filed at the above-captioned case. The Defendant was seen for a negative MHC review on June 1, 2015, where it was related by a JRS representative that the Defendant minimized the new charges, blaming Caleb's death on the Defendant's own six (6) year old child, and stating that he "only" had a few benzos (slang for benzodiazipans).

11

Thus, to suggest that this court failed to give adequate consideration to the Defendant's rehabilitative needs when it imposed the aggregate sentence is completely unfounded. The Defendant had been accepted into MHC because this court, due to his long history of non-compliance with probation, had recognized his struggle with substance abuse and mental health issues. This court believed when it accepted him into MHC that the Defendant was sincere in his desire to address those issues and that he would substantially benefit from a program that was focused on rehabilitation through various substance abuse and mental health counseling programs. However, despite this court's best efforts to work with him through regular probation and then through MHC, the Defendant continued to use drugs while he was purportedly in recovery, even going so far as to experience an overdose during his time at the Cash Club, a treatment and addiction facility. (Resentencing Hearing Transcript ("RHT"), 3/20/18, pp. 6-9).

Notwithstanding the Defendant's continued drug use and non-compliance with the terms of MHC, this court continued to work with him, believing that the Defendant was serious about overcoming his relapse and addiction. (RHT, pp. 7-9). However, the Defendant's own overdose was not sufficient to deter him from drug use, and on May 3, 2015, the Defendant paid the ultimate price for his drug addiction, when it directly led to the tragic and untimely death of his three (3) month old son. (RHT, p. 8); (Guilty Plea Transcript, dated 2/2/16 ("PT 2/16"), p. 26). The newborn died because the Defendant shirked his parental duties and delegated the responsibility of caring for the infant, as well as another young child, to the Defendant's six-year old daughter, so that he could get high. (RHT, p. 8); (PT, 2/16 p. 26). The Defendant even pathetically blamed his six-

12

year-old daughter for not appropriately caring for the baby while he was high. (RHT, p. 8). His daughter is still undergoing therapy for the trauma she endured as a direct result of the Defendant's actions. (RHT, p. 9).

Following the death of his infant, a mental health evaluation was conducted at the ACJ, and the Defendant was deemed competent to stand trial, ultimately pleading guilty at CC# 2015-5993 to three (3) felony counts of endangering welfare of children on February 2, 2016. (PT 2/16, p. 6). The Defendant's new convictions constituted violations of his MHC probation at case numbers 2014-9907, 2014-9592, 2013-5200 and 2012-3804. (PT 2/16 p. 6). It was disappointing enough that the Defendant committed new crimes while under MHC supervision, but the fact that those crimes involved the death of an infant was a circumstance that far exceeded his prior conduct and violations. This court concluded that it could not continue to work with the Defendant in the community, either on regular probation or under MHC supervision.

Notwithstanding the gravity and nature of the Defendant's offenses, the parties negotiated an agreement that permitted the Defendant's participation in the State Intermediate Punishment ("SIP") program. At the Defendant's February 2, 2016 plea hearing, the court expressed its sincere doubts over whether the Defendant deserved consideration for the SIP program, given the seriousness of his offense conduct, the impact it had on his surviving children and his family, and the tremendous loss that had been suffered due to his neglectful and irresponsible behavior. (PT 2/16, pp. 25-26).

13

This court struggled with how to properly address the Defendant's conduct, and part of this court believed that the Defendant did not deserve such a generous sentence, given his overall behavior. (PT 2/16, p. 26). The powerful and emotional victim statement which was read into evidence at the time of the plea hearing perfectly summarized the concerns that this court had harbored. (PT, p. 17-21, 26).

However, given this court's role and involvement in the MHC program, this court has a unique and genuine understanding of the difficulty individuals experience when attempting to address their substance abuse and mental health court issues. Therefore, this court reluctantly agreed to give the Defendant "one last shot" through the SIP program, informing the Defendant that the SIP program was the last mechanism this court had left to help him. (PT 2/16, pp. 25-27). The Defendant's SIP sentence was intended to afford him with a meaningful opportunity to continue to seek treatment, which was a substantial factor in this court's decision to impose an SIP sentence. (PT 2/16, p. 24). The court agreed that the Defendant's sentences for his MHC violations would be tied into the SIP sentence for the case at CC# 2015-5993. (PT 2/16, pp. 22-23).

At the time of his plea hearing, the Defendant was specifically informed that if he failed to comply with the terms of the SIP program, he would be resentenced, and the guidelines would be "out the window at that point." (PT, 2/16, pp. 26-27). The court then left the Defendant with the following warning:

14

**So this is your last shot to get the help that you say you need that would change your life.** I certainly hope it will, because certainly your life up to this point has changed your children's lives, and it has not been in a positive way. I mean, as parents, you know, you are charged with protecting those children, loving those children, doing whatever is necessary to make those children's lives the best they can possibly be. You've totally failed in that regard. The hope is that you'll make changes in your life so that maybe, you know, you can go forward in a more positive way, maybe you can have a positive relationship with your children and they can learn something from you, if the only thing they learn is the path not to take.

(PT, 2/16, p. 28) (emphasis added). The court then ordered that the Defendant be evaluated for potential participation in the SIP Program. (Id.).

Following his evaluation, the Defendant was accepted into the SIP program. On August 30, 2016, the Defendant was formally sentenced to the program. (Sentencing Transcript ("ST"), 8/30/16, pp. 2-3). The court also sentenced the Defendant for his MHC probation violations at case numbers 2012-3804, 2013-5200, 2014-9592, and 2014-9907. For his probation violations, the court took credit for time served and closed interest at case numbers 2012-3804, 2013-5200, and 2014-9592. (ST, p 4). At CC# 2014-9907, this court revoked the prior period of probation, and imposed a new, one (1) year term of probation, to commence upon the Defendant's release from incarceration. (ST, pp. 4-5).

At Count One (1) of CC# 2015-5993, this court sentenced the Defendant to a period of 24 months in the SIP program. At Count Two, a period of two (2) years' probation was imposed, to run consecutive to the period of probation imposed at CC#

15

2014-9907. (ST, p. 5). At Count Three (3), the Defendant received another two (2) year period of probation, which was ordered to run consecutively to the other periods of probation imposed. (ST, p. 5). In total, the Defendant received a five (5) year term of probation to follow his completion of the SIP program. (ST, pp. 5-6). The Defendant also was ordered to have no contact with his surviving children, as well as their custodians. (ST, p. 6).

At the conclusion of the August 30, 2016 sentencing hearing, the court once again conveyed its hesitation with the imposition of an SIP sentence. Specifically, the court stated:

> Mr. Reiber the Commonwealth has negotiated this plea agreement which is - - I'm sure you are probably well aware, I'm not happy about. Because they think that you deserve an opportunity to show that you can make some changes in your life. **My feeling is we gave you those opportunities in mental health court and you never took advantage of them. As a result, one of your children died. So I'm certainly hoping that that horrifying event and your incarceration is enough to maybe get you on track. If it is not, sir, I'll be sitting here waiting for you.** Okay.
>
> So you better make sure that you successfully complete the state IP program, that you have no contact and you walk off my five years of probation without any problems. Do you understand that, sir?

(ST, pp. 9-10) (emphasis added). The Defendant confirmed his understanding. (Id. at 10).

Unfortunately, the Defendant failed to heed any of the court's warnings about making the most of his time in the SIP program. In February of 2017, having spent less

16

than six (6) months in a program that lasts 24 months total, this court received notice that the Defendant was being terminated from the SIP program because the Defendant had four (4) positive urinalysis tests for illegal substances and experienced an accidental non-fatal opioid overdose during his short time in the program. (Court Exhibit 13). Due to these facts, the SIP program concluded that he had failed to meaningfully participate in the program. (RHT, pp. 3-9). On March 20, 2018, a resentencing hearing was held, and this court imposed the aggregate sentence of 7 to 14 years' imprisonment, which is the subject of this appeal.

Against this backdrop, the Defendant's challenge to his sentence is wholly without merit. The court clearly had taken into account the Defendant's rehabilitative needs when it first monitored him on regular probation, when it accepted him into MHC, and it did so again when it extended him the opportunity to participate in the SIP program. As noted, the court initially was hesitant to allow him the opportunity to participate in the SIP program given the serious nature of his offense conduct, and the fact that such a heinous offense was committed while he was being offered a chance to seek rehabilitative treatment for his mental health and substance abuse issues through MHC.

Despite this court's willingness to afford him one last opportunity to address his issues, the Defendant nevertheless violated the terms of the SIP program, knowing full well the repercussions that he would face with this court. The Defendant's behavior as a whole indicated that he was either unwilling or unable to transform into a sober, law

17

abiding citizen, and either circumstance makes him a threat to society. This is particularly true considering that not even the death of his own newborn was enough to usher him down the path of sobriety.

Overall, this court made a sincere and genuine attempt to work with the Defendant. The court continuously gave him the benefit of the doubt, and it repeatedly attempted to provide him with meaningful avenues of addressing his mental health and substance abuse issues, instead of imposing a serious punishment for his crimes. However, the Defendant's history of non-compliance on regular probation and while in MHC, coupled with his behavior in the SIP program, showed that he lacked a genuine desire to address his mental health and substance abuse issues.

The Defendant's conduct as a whole demonstrated a need for a much more substantial sentence, since more lenient sentences, with requirements and opportunities for treatment, clearly had failed to deter him from substance abuse and criminal activity. Indeed, the fact that the Defendant could not comply with the terms of the SIP program after knowing that he received a substantial break in his sentence further serves to demonstrate the need for a lengthy term of imprisonment. The Defendant has failed to make any progress throughout the years, despite the numerous opportunities and resources that he has been offered, the number of prior incarcerations at the county level, and the leniency that he has previously been shown with respect to sentencing. Thus, contrary to the Defendant's contention, the aggregate sentence took

18

into account all relevant sentencing factors and was not an abuse of discretion. Based on the foregoing, the aggregate sentence of 7 to 14 years of imprisonment was not manifestly excessive or unreasonable in this case.

With respect to the contention that this court erred by not stating its reasons for deviating from the guidelines, this argument has no merit. First, the sentencing guidelines do not apply to sentences that are imposed as a result of a revocation from an intermediate punishment program. Commonwealth v. Phillipp, 709 A.2d 920 (Pa. Super. 1998); Commonwealth v. Cartrette, 83 A.3d 1030, 1040 (Pa. Super. 2013) (noting that "sentencing guidelines are not required to be consulted in" revocation proceedings"); 204 Pa. Code § 303.1(b). "The sentencing court obviously need not explain deviation from the guidelines where they do not apply." Phillipp, *supra* at 922. However, this court is aware that it must, nevertheless, "follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." Cartrette, *supra* at 1040-41. The court is further aware that, in all cases where the court "resentences an offender following revocation of . . . State intermediate punishment, . . . the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." Id. at 1041.

19

Prior to imposing the sentence in this case, the court listened to the positions of counsel with respect to sentencing, the victim statement from the Defendant's father, as well as the Defendant's allocution where he completely failed to take any ownership for his actions. (RHT, pp. 3-14). Instead of showing any remorse for his actions, the Defendant deflected responsibility and indicated that he should have fought the charges, stating:

> I'll be honest with you, Your Honor. After reading my discovery, every last one, these last couple years it really gave me a chance to review my discovery, there is a lot of accusations and a lot of things being thrown out there, that if everybody had a chance to honestly read the affidavit and look through certain things and certain facts that were in the affidavit and through forensics, a lot of things were being pushed towards me and blamed upon me that weren't in my doings that night and prior to this. (RHT, pp. 13-14).

The court, completely dumbfounded by his statements, responded:

> Sir, I simply am incredulous at the response that you have made here today on your behalf. Like [the Commonwealth] I look at this case and cannot understand how anyone cannot seek and take advantage of every bit of help that is available to them to make changes because of what happened, because of the circumstances of this case. And we gave you an opportunity, and quite frankly at the time that that opportunity was extended to you I was not happy with that offer. I was not happy with that deal because in my opinion I did not think you were going to take advantage of it. And you certainly have proven me right. I wish you would have done something different but you made your choices and you chose to continue to use and to continue to go back to the lifestyle that brought you here for this terribly tragic, horrible case. And in your comments today you certainly have not it seems to me advanced in any way, shape or form from the point that we were at when we did this sentencing on I guess August 30 of '16. And you made no advancement since then whatsoever and in fact in my mind it appears that you have gone backwards. You certainly haven't gone forward at all, you have gone backwards just based on the comments you have made here today.

(RHT, pp. 14-15). In addition to the statements made at the March 20, 2018 Resentencing Transcript, a reading of the February 2, 2016 Plea Transcript and the

20

August 30, 2016 Sentencing Transcript also lend an explanation as to this court's reasoning for the sentence imposed. Accordingly, the Defendant's contention should be rejected on appeal because this court stated its reasons for the sentence imposed. The Defendant's sentence is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victims and the community, and the Defendant's rehabilitative needs.

Finally, with respect to the contention that the imposition of consecutive sentences was an abuse of discretion, this argument also has no merit. As explained in Moury, supra, at 171-72,

> Under 42 Pa.C.S.A. § 9721, the court has discretion to impose sentences consecutively or concurrently and, ordinarily, a challenge to this exercise of discretion does not raise a substantial question. Commonwealth v. Pass, 914 A.2d 442, 446-47 (Pa. Super. 2006). The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment. Id. (holding challenge to court's imposition of sentence of six (6) to twenty-three (23) months imprisonment and sentence of one (1) year probation running consecutive, did not present substantial question). Compare Dodge II, supra (holding imposition of consecutive sentences totaling 58 ½ to 124 years imprisonment for thirty-seven (37) counts of theft-related offenses presented a substantial question because total sentence was essentially life sentence for forty-two year-old defendant who committed non-violent offenses with limited financial impact).

Here, the imposition of consecutive sentences fails to raise a substantial question because it is not unduly harsh considering the nature of the Defendant's crime, his overall history with the court, and the length of imprisonment. Furthermore, "extensive

21

case law in this jurisdiction holds that defendants convicted of multiple offenses are not entitled to a 'volume discount' on their aggregate sentence." Commonwealth v. Foust, 180 A.3d 416, 433 (Pa. Super. 2018). Based on the aforementioned reasons, the Defendant certainly was not entitled to any volume discount given the serious nature of his crimes and his overall conduct during his time with this court. Contrary to the Defendant's allegation, this court was fully aware of "the whole picture" when it sentenced the Defendant. Because a consecutive sentence was justified by the circumstances in this case, this contention also should be rejected on appeal.

## II. CONCLUSION

The Defendant's contentions of error on appeal are without merit. Based on the foregoing, the court did not abuse its discretion in imposing an aggregate sentence of 7 to 14 years imprisonment. The sentence did not exceed the statutory maximums; it was not manifestly unreasonable under the circumstances; it was a product of various considerations; and it was arrived at after careful and thoughtful deliberation. The court stated its reasons for the sentence on the record, and the Defendant was not entitled to a concurrent sentencing scheme.

BY THE COURT:

_____, J.
BETH A. LAZZARA, JUDGE

____10/25/18____
DATE

22