J-S04006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSEPH MANDER | : | |
| | : | |
| Appellant | : | No. 1595 EDA 2019 |

Appeal from the Judgment of Sentence Entered January 28, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000055-2018

BEFORE: BENDER, P.J.E., STABILE, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED APRIL 7, 2020**

Appellant, Joseph Mander, appeals from the judgment of sentence of an aggregate term of 25-50 years' incarceration, imposed following his *nolo contendere* plea to third-degree murder, arson, and possession of an instrument of crime ("PIC"). Appellant challenges the discretionary aspects of his sentence, and also argues that the trial court erred when it denied his motion to withdraw his *nolo contendere* plea. After careful review, we affirm.

On November 26, 2018, Appellant entered a *nolo contendere* (or "no contest") plea to third-degree murder, arson, and PIC. At the hearing, the Commonwealth set forth the factual basis for the plea, which was summarized by the trial court as follows:

> [Philadelphia Police Officers] Daniel Barr and Christo Fountas responded to a radio call for a person screaming at 1308 N. 53rd Street in the city and county of Philadelphia. When they arrived, [Appellant] told them that he had done something bad.

[Appellant] then gave the officers permission to enter the property through the window because he was unable to open the door.

After officers entered, [Appellant] told them that his aunt was upstairs snoring and that something bad had happened to her. The officers proceeded to the second floor hallway with [Appellant], where they found the decedent, Marguerite Mander, unconscious, laying on her back bleeding and burned on her legs, back and butt. Officer Barr immediately called for paramedics and asked [Appellant] what happened. [Appellant] responded, "I did it because she was controlling me and I set her on fire and tried to kill her." Officer Barr placed [Appellant] in handcuffs and took him downstairs.

While walking to the patrol car, [Appellant] motioned to a knife, which was later recovered from the dining room table. [Appellant] indicated to Officer Barr that he used the knife to stab his aunt.

The paramedics arrived and transported the decedent to Presbyterian Hospital. [Appellant] was transported to Southwest Detectives Division, where he was advised of his charges and agreed to provide a statement to Detectives Christopher Clair and Thomas Dilaerio.

In his statement, [Appellant] admitted to stabbing the decedent in the eye and lighting her on fire. He described that they had an argument about his aunt kicking him out of the house and he was tired of her controlling him.

The decedent was pronounced dead the next day, November 11, 2017[,] at Presbyterian Hospital at 6:08 p.m. The cause of death was complications of blunt impact injuries to her head, as well as thermal injuries. The manner of death was homicide.

Two knives were recovered from the scene, as well as a pair of sneakers and a box of matches. With respect to the knife recovered [from] the dining room table[,] the major component of the DNA mixture obtained from the handle of the knife was consistent with originating from [Appellant].

The DNA analyst, Janicia Huttley, who would be qualified as an expert, … testif[ied] at trial [regarding] the knife recovered from the upstairs bedroom. The swab of the handle of that knife was consistent with … a … partial DNA profile [mixture] and that mixture originated from Marguerite Mander and [Appellant].

- 2 -

Testing of [Appellant]'s sneakers revealed a DNA mixture that under the scenario that it originated from Marguerite Mander and [him] was 191.6 sextillion times … more likely to occur, tha[n if] it originated from Marguerite Mander and one random unrelated person in the African American population.

The fire marshal, Lieutenant Andrew Robinson, was called to the scene, prepared a report and determined that the cause of the fire was incendiary.

Investigators further recovered two videos from a Youtube account that depicted [Appellant] and the victim arguing about various topics, including the money [Appellant] thought he was entitled to. [T]hose videos were posted to the Youtube account on November 4th of 2017 entitled[,] "My aunt is the most evil woman on earth" and "Her and my confession."

The Commonwealth would have also presented evidence at trial that [Appellant] had physically assaulted the victim on a prior occasion. That evidence would have gone to prove malice, as well as intent, absence of mistake and to explain the nature of the relationship between the parties. That incident occurred on June 22nd of 2016.

Trial Court Opinion ("TCO"), 7/29/19, at 2-4 (cleaned up) (quoting from N.T., 11/26/18, at 1-25).

On January 28, 2019, the trial court sentenced Appellant to 20-40 years' incarceration for third-degree murder, a consecutive term of 5-10 years' incarceration for arson, and no further penalty for PIC. Appellant did not initially file post-sentence motions or an appeal. However, on February 14, 2019, he mailed a letter to the trial court, alleging that he had been tricked and/or threatened into pleading *nolo contendere*. **Id.** at 1. The trial court treated the letter as a Post Conviction Relief Act[1] ("PCRA") petition, and

---

[1] 42 Pa.C.S. § 9541 *et seq*.

appointed counsel to represent Appellant. On April 22, 2019, Appellant filed an amended and counseled PCRA petition seeking reinstatement of his direct appeal and post-sentence motion rights *nunc pro tunc*. The Commonwealth consented and, on the same day, the court granted the petition.

On May 2, 2019, Appellant filed an omnibus post-sentence motion seeking to withdraw his *nolo contendere* plea and, alternatively, challenging the discretionary aspects of his sentence. The trial court denied the omnibus post-sentence motion without a hearing on May 13, 2019. Appellant filed a timely appeal on May 29, 2019, and he subsequently filed a timely, court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued its Rule 1925(a) opinion on July 29, 2019.

Appellant now presents the following issues for our review:

1. The [trial c]ourt erred in that its sentence was unreasonable in that [it] was nearly twice the standard guidelines without [the court's] articulating adequate reasons for the departure. The trial court abused its discretion when it imposed a sentence exceeding the aggravated guidelines without explaining compelling reasons why the particular offense was more severe than the normal crime of that type.

2. The [trial c]ourt erred in that its sentence was beyond the top end of the aggravated range without consideration of Appellant's individual characteristics.

3. The [trial c]ourt erred in that its sentence took into consideration factors already included in the sentencing guidelines to fashion an aggravated sentence above the aggravated range which double counted Appellant's prior record score and/or offense gravity score.

4. The [trial c]ourt erred when it denied Appellant's motion to withdraw his [*nolo contendere*] plea and request to allow him to proceed to trial. Appellant's plea was not knowing

- 4 -

and intelligent and was the product of duress from the [t]rial [c]ourt, the Assistant District Attorney[,] and [t]rial [c]ounsel. Appellant was suffering from a mental defect that further rendered his plea null.

Appellant's Brief at 5.

## Motion to Withdraw *Nolo Contendere* Plea

For ease of disposition, we first address Appellant's claim that the trial court erred when it denied his post-sentence motion to withdraw his *nolo contendere* plea. "[I]n terms of its effect upon a case, a plea of *nolo contendere* is treated the same as a guilty plea." **Commonwealth v. Miller**, 748 A.2d 733, 735 (Pa. Super. 2000). "A guilty plea which is not the personal and voluntary decision of the accused, but rather is 'induced by promises or threats which deprive it of the character of a voluntary act, is void.'" **Commonwealth v. Forbes**, 299 A.2d 268, 271 (Pa. 1973) (quoting **Machibroda v. United States**, 368 U.S. 487, 493 (1962)). However, a

> defendant wishing to challenge the voluntariness of a guilty plea on direct appeal must either object during the plea colloquy or file a motion to withdraw the plea within ten days of sentencing. Pa.R.Crim.P. 720(A)(1), (B)(1)(a)(i). Failure to employ either measure results in waiver. **Commonwealth v. Tareila**, 895 A.2d 1266, 1270 n.3 (Pa. Super. 2006). Historically, Pennsylvania courts adhere to this waiver principle because "[i]t is for the court which accepted the plea to consider and correct, in the first instance, any error which may have been committed." **Commonwealth v. Roberts**, … 352 A.2d 140, 141 ([Pa. Super.] 1975)….

**Commonwealth v. Lincoln**, 72 A.3d 606, 609–10 (Pa. Super. 2013).

> Further, a defendant who attempts to withdraw a guilty plea after sentencing must demonstrate prejudice on the order of manifest injustice before withdrawal is justified. **Commonwealth v. Muhammad**, 794 A.2d 378, 383 (Pa. Super. 2002). "A plea rises

to the level of manifest injustice when it was entered into involuntarily, unknowingly, or unintelligently." ***Id.***

***Commonwealth v. Pantalion***, 957 A.2d 1267, 1271 (Pa. Super. 2008).

Appellant satisfied the procedural requirements for withdrawing his plea by raising the matter in a post-sentence motion. Thus, we turn to consider the merits of his claim.

Appellant asserts three reasons for the withdrawal of his *nolo contendere* plea. He alleges 1) duress caused by the trial court, the Assistant District Attorney, and his trial counsel; 2) a mental defect; and/or 3) actual innocence. Appellant's Brief at 5. In the argument section of his brief, however, there is no analysis pertaining to the first two allegations, effectively denying any opportunity for this Court to meaningful review those aspects of Appellant's claim. Accordingly, Appellant has waived those arguments. ***See Commonwealth v. Beshore***, 916 A.2d 1128, 1140 (Pa. Super. 2007) ("The failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119.") (cleaned up).

Appellant does provide a cursory discussion of the third portion of this claim, wherein he asserts that it was manifestly unjust for the trial court to deny his motion to withdraw his *nolo contendere* plea because he is purportedly innocent. Appellant argues:

> An innocent person ple[]d no contest to a crime he did not commit. Appellant has always contended that there were two women in his aunt's house at the time of the murder. Specifically, on the day of the no contest plea, Appellant told the court:
>
>> I told you I was threatened, I was threatened by a female. I don't know the two girls.

> They were prostitutes. I should have never let them in the house. I should have never let them upstairs with my aunt, but I did, and when I went back upstairs, she was stabbed.

N.T.[,] 11/26/18[,] at 41-42.

At his sentencing, Appellant again stated:

> I didn't stab my aunt.  But without my aunt on this earth, it does not even matter.  My life is going to be hell regardless.  I didn't stab my aunt.  I didn't burn my aunt.  I was scared what would happen if I told, because I thought I would end up being shot.

N.T.[,] 11/28/18[,] at 39.

The trial court erred and abused its discretion when it did not allow Appellant to withdraw his no contest plea.  Appellant did not enter a knowing, intelligent, voluntary, and understanding plea, and Appellant is in fact innocent.

Appellant's Brief at 19-20.

We are unconvinced by Appellant's argument in light of the record.  As discussed by the trial court:

> In the case at bar, [Appellant] failed to demonstrate prejudice on the order of manifest injustice.  His post-sentence claim of innocence is not a demonstration of manifest injustice because the record reflects that [he] entered into a knowing, intelligent, and voluntary plea.  This [c]ourt discussed the possibility of pleading guilty or *nolo contendere* with [Appellant] on multiple occasions and ensured that he understood the difference between both options, as well as other options, such as proceeding to trial. N.T.[,] 11/15/2018[,] at 20-25; N.T.[,] 11/26/2018[,] at 5-6. After considering all of the options before him, [Appellant] chose to enter into a *nolo contendere* plea.
>
> At the guilty plea hearing, [Appellant] reviewed and signed a written *nolo contendere* colloquy form and indicated to this [c]ourt that he understood the nature of the charges he pled *nolo contendere* to, the factual basis for his plea, his right to a jury trial, the presumption of innocence, and the permissible range of sentences.  N.T.[,] 11/26/2018[,] at 6-7; ***see also*** Written *Nolo Contendere* Plea Colloquy (attached as "Exhibit A").  By signing

- 7 -

the colloquy form, [Appellant] indicated that he wished to enter his plea on his own volition and willingly gave up defenses to the charges, and the majority of his appellate rights.

This [c]ourt supplemented [Appellant]'s written colloquy form with an extensive oral colloquy, during which this [c]ourt confirmed that [Appellant] had attended college, and could read, write, and understand the English language. N.T.[,] 11/26/2018[,] at 7. This [c]ourt further verified that [he] understood that he was giving up all of his rights to trial. *Id.* at 8-9, 12-13. This [c]ourt reviewed the elements and maximum penalties of each crime with [Appellant] and reminded him that he was presumed to be innocent until proven guilty. *Id*. at 9-11, 19. This [c]ourt also explained the secondary effects of his no contest plea, including a possible violation of probation for a previous offense. *Id.* at 14-15. Knowing this information, [Appellant] decided to enter into a no contest plea. After this [c]ourt heard a summary of the facts and determined that the Commonwealth had sufficient evidence to prove [Appellant] guilty, it accepted his plea. *Id.* at 35-36. This [c]ourt did not err in denying [Appellant]'s motion to withdraw his guilty plea.

TCO at 5-6.

We agree with the trial court. Little in the record supports Appellant's claim that his *nolo contendere* plea was not knowing, intelligent, and voluntary, beyond his intermittent claims of innocence. Those bald assertions of innocence are not enough to overcome the validity of his plea.

Once a defendant has entered a plea of guilty, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him. Therefore, where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established. A defendant is bound by the statements he makes during his plea colloquy, and may not assert grounds for withdrawing the plea that contradict statements made when he pled.

- 8 -

***Commonwealth v. Stork***, 737 A.2d 789, 790–91 (Pa. Super. 1999).

Moreover,

> a defendant's innocence claim must be at least plausible to demonstrate, in and of itself, a fair and just reason for … withdrawal of a plea. More broadly, the proper inquiry on consideration of such a withdrawal motion is whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice.

***Commonwealth v. Carrasquillo***, 115 A.3d 1284, 1292 (Pa. 2015) (citation omitted).

Presently, Appellant has not made a *colorable demonstration* that the withdraw of his plea would have promoted fairness and justice. Appellant was present at the scene of the crime when police arrived, soon after screaming was heard from the residence, and he immediately made several admissions of guilt to the arriving officers, admissions he repeated in statements to police when taken into custody. DNA evidence linked him to the knife used in the murder, which Appellant had also identified to police at the scene of the crime. Nothing in the record supports his claim that anyone else was present at the scene when the murder occurred. His assertions of innocence appear implausible under the circumstances, absence some modicum of corroborating evidence. As such, we detect no manifest injustice in the trial court's decision to deny his post-sentence motion to withdraw his *nolo contendere* plea. Accordingly, we conclude this claim is without merit.

**Discretionary Aspects of Appellant's Sentence**

Appellant's next three claims all concern the discretionary aspects of his sentence.

> "Issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings." **Commonwealth v. Shugars**, 895 A.2d 1270, 1273–74 (Pa. Super. 2006). "Absent such efforts, an objection to a discretionary aspect of a sentence is waived." **Id.** at 1274.

**Commonwealth v. Rhoades**, 8 A.3d 912, 915 (Pa. Super. 2010).

> Additionally,

> "[a] challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." **Commonwealth v. McAfee**, 849 A.2d 270, 274 (Pa. Super. 2004)…. When challenging the discretionary aspects of the sentence imposed, an appellant must present a substantial question as to the appropriateness of the sentence. **See Commonwealth v. Tirado**, 870 A.2d 362, 365 (Pa. Super. 2005). "Two requirements must be met before we will review this challenge on its merits." **McAfee**, 849 A.2d at 274. "First, an appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." **Id.** "Second, the appellant must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code." **Id.** That is, "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." **Tirado**, 870 A.2d at 365. We examine an appellant's [Pa.R.A.P.] 2119(f) statement to determine whether a substantial question exists. **See id.** "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." **Id.**

**Rhoades**, 8 A.3d at 916 (footnote omitted).

Appellant preserved his challenges to the discretionary aspects of his sentence in a post-sentence motion, and he provided a concise statement

pursuant to Rule 2119(f) of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence. Furthermore, his three sentencing claims present substantial questions for our review. *See Commonwealth v. Macias*, 968 A.2d 773, 776 (Pa. Super. 2009) (recognizing "an averment that the [trial] court sentenced based solely on the seriousness of the offense and failed to consider all relevant factors raises a substantial question"); *Commonwealth v. Simpson*, 829 A.2d 334, 338 (Pa. Super. 2003) (stating that a claim that a trial court double-counted "factors already included in the sentencing guidelines … raises a substantial question requiring our review"); *Commonwealth v. Johnson*, 666 A.2d 690, 692 (Pa. Super. 1995) (holding claims that "the sentencing judge sentenced outside the guidelines without reflecting a consideration of the guidelines, and that the sentencing judge failed to state adequate reasons on the record for sentencing outside the guidelines[,]" presents substantial questions for our review). Thus, we must review the merits of Appellant's sentencing claims.

First, Appellant asserts that the trial court abused its discretion by imposing a sentence that was "nearly twice the standard guidelines" recommendation, without the court's articulating adequate reasons for the upward departure. Appellant's Brief at 15-16. Essentially, Appellant argues that the trial court's reasons for the upward departure from the guidelines were excessively focused on the gravity of the offense, which Appellant believes was already reflected in the sentencing guidelines' recommendations,

and that the court failed to distinguish Appellant's crime from that of the typical third-degree murder. For the following reasons, this claim is meritless.

First, the trial court did not depart from the standard guidelines. As the court explained:

> At the time of this offense, [Appellant] had a prior record score of 3.[3] For Third-Degree Murder, the offense gravity score ("OGS") is 14, and a standard range guideline sentence is 138-SL[2] +/- 12 [months' incarceration]. For Arson, the OGS is 10, and a standard range guideline sentence is 60-72 +/- 12 [months' incarceration]. For PIC, the OGS is 3, and a standard range guideline sentence is restorative sanctions ("RS") to 12 +/- 3 [months' incarceration]. This [c]ourt imposed a sentence of 20-40 years['] imprisonment for Third-Degree Murder, 5-10 years['] imprisonment for Arson, and no further penalty for PIC, for a total sentence of 25-50 years['] imprisonment. The sentences imposed by this [c]ourt fall squarely within the standard range guidelines.
>
> > [3] At the time of this offense, [Appellant] had seven prior [m]isdemeanor convictions, including two convictions for Simple Assault, one conviction for Terroristic Threats, two convictions for drug[-]related offenses, and two convictions for theft[-]related offenses. [His] remaining convictions were for [s]ummary offenses and did not factor into his [p]rior [r]ecord [s]core.

TCO at 8.

In his brief, Appellant does not dispute the trial court's calculations or offer an alternative analysis. Additionally, upon our own review of the guidelines, we ascertain no error by the trial court. *See Commonwealth v. Haynes*, 125 A.3d 800, 808 (Pa. Super. 2015) (holding that that the defendant's statutory maximum "sentence of twenty to forty years of

---

[2] "SL" refers to the statutory limit on the minimum term of the imposed sentence. It is precisely half of the statutory maximum term of incarceration for the same offense.

incarceration for third-degree murder was a standard-range sentence"). Thus, Appellant's claim is meritless; the trial court did not impose a sentence outside of the standard range recommendations and, thus, it had no obligation to justify a departure therefrom.

Second, we acknowledge that the trial court imposed the harshest possible penalty for third-degree murder. However, the circumstances of this case do not suggest that the sentence is disproportionate to the gravity of the offense, independent of other relevant sentencing factors. The trial court described Appellant's murder of his aunt as "one of the most heinous crimes" it had ever seen. N.T., 11/28/18, at 40. Indeed, Appellant stabbed his own aunt in the eye and then set her on fire. Consequently, we detect no abuse of discretion in the court's decision to afford the gravity of this offense significant weight.

Next, Appellant asserts that the trial court abused its discretion by sentencing Appellant "beyond the top end of the aggravated range without consideration of Appellant's individual characteristics." Appellant's Brief at 16 (italics omitted). For the reasons set forth above, this issue is meritless as Appellant received standard range sentences.

Moreover, the trial court ordered and reviewed a pre-sentence report and a mental health evaluation of Appellant prior to imposing the sentence. Appellant argues that the trial court gave short shrift to the mitigating evidence contained in those reports, but does not otherwise dispute their contents. "When, as here, the trial court ha[d] the benefit of a pre-sentence

report, we presume that the court was aware of relevant information regarding the defendant's character and weighed those considerations along with any mitigating factors." **Commonwealth v. Seagraves**, 103 A.3d 839, 842 (Pa. Super. 2014). Appellant's bare assertions do not overcome that presumption. Accordingly, we ascertain no abuse of discretion with regard to the trial court's consideration of his individual, mitigating characteristics at sentencing.

Finally, Appellant contends that the trial court "took into consideration factors already included in the sentencing guidelines to fashion an aggravated sentence above the aggravated range which double counted Appellant's prior record score and/or offense gravity score." Appellant's Brief at 17 (italics omitted). Again, as noted above, the trial court did not sentence Appellant in the aggravated range of the sentencing guidelines for any of his offenses, nor was he sentenced outside the guidelines.

Appellant provides no analysis or reference to relevant legal authorities in the argument portion of his brief suggesting that the offense gravity scores for his offenses were miscalculated.[3] Moreover, the entirety of Appellant's argument regarding the calculation of his prior record scored is his assertion that his prior record

> was, in effect, impermissibly used against [him] twice. Once by the guidelines themselves in the calculation of his prior record score and once by the court when it deviated from the guidelines.

---

[3] Indeed, Appellant does not discuss this matter at all. Thus, it is waived. **See Beshore**, **supra**.

The trial court denied that it double counted Appellant's prior record score. [TCO at 7]. However, the court noted early in the sentencing that: "Mr. Mander, your prior record score is a three, and this is how the [c]ourt arrived at that score. You had no arrests as a juvenile. As an adult, you have 16 arrests, 10 convictions, two of which were for summary offenses, six commitments." N.T.[,] 1/28/19[,] at 7. In its opinion, in support of its sentence, the trial court stated that Appellant's prior record score of 3 did not accurately reflect the extent of Appellant's past criminal conduct. *Id.* at 8. Stated another way, the trial court used a [p]rior [r]ecord [s]core of 3 to calculate a guideline sentence, but sentenced him as if his score were higher.

Appellant's Brief at 17-18.

Yet again, Appellant's argument hinges on his contention that the court deviated from the guidelines. It did not, and so his claim is meritless. We further ascertain no abuse of discretion with regard to the court's characterization of Appellant's prior record score as not fully encapsulating his prior criminal conduct. Appellant fails to cite any authority suggesting that such comments were improper. Additionally, it

is well established that the [s]entencing [g]uidelines are purely advisory in nature. As th[e] Court explained in *Commonwealth v. Sessoms*, … 532 A.2d 775, 780–81 ([Pa.] 1987), the [g]uidelines do not alter the legal rights or duties of the defendant, the prosecutor or the sentencing court. The guidelines are merely one factor among many that the court must consider in imposing a sentence.

*Commonwealth v. Yuhasz*, 923 A.2d 1111, 1118 (Pa. 2007).

One of the statutory duties of the sentencing court is to "follow the general principle that the sentence imposed should call for total confinement that is consistent with … the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and

- 15 -

the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). Appellant's prior interactions with the criminal justice system inform consideration of both the protection of the public and his rehabilitative needs, and those deliberations are not limited to the mechanical calculation of a prior record score. *See Commonwealth v. Darden*, 531 A.2d 1144, 1149 (Pa. Super. 1987) (holding that the "record of criminal conduct" that is not incorporated in the guidelines "constitutes a significant aggravating factor" in considering whether to depart from a standard guideline sentence). As was the case in *Darden*, the trial court here was free to consider Appellant's extensive prior interactions with the criminal justice system beyond their prior record score value under the sentencing guidelines. *See id.* (recognizing that Darden's "prior record score of three did not begin to account for [his] staggering record of criminal activity[,]" which included "prior adult misdemeanors, juvenile felony adjudications, parole and probation violations, [and] unexpunged arrests" not "incorporated in the computation of the prior record score"). Thus, Appellant's apparent premise—that the trial court was limited by Appellant's prior record score in its consideration of his prior criminal record for the purpose of constructing an appropriate, individualized sentence—is flawed. Consequently, we ascertain no abuse of discretion by the trial court in its evaluation of Appellant's prior record above and beyond what was represented by his prior record score.

Judgment of sentence *affirmed*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/7/2020